**FIREMAN'S FUND INSURANCE COMPANIES and American Insurance Company, Plaintiffs,**

v.

**EX–CELL–O CORPORATION, et al., Defendants.**

**EX–CELL–O CORPORATION, et al., Third–Party Plaintiffs,**

v.

**AIU INSURANCE COMPANY (successor to American International Insurance Company), et al., Third–Party Defendants.**

Civ. A. No. 85–71371.

United States District Court, E.D. Michigan, S.D.

Dec. 14, 1988.

---

Rivkin, Radler, Dunne & Bayh by Jeffrey Silberfeld, Uniondale, N.Y., for American Ins. Co.

Hill, Lewis, Adams, Goodrich & Tait by Robert B. Webster and Richard C. Sanders, Detroit, Mich., for Ex–Cell–O, McCord Gasket Corp. and Davidson Rubber Co.; Anderson, Russell, Kill & Olick, P.C., Nicholas J. Zoogman, Eugene R. Anderson, Avraham C. Moskowitz and Steven P. Vincent, New York City, of counsel.

Jerome C. Gropman & Associates by Raymond I. Foley, Birmingham, Mich., Robins, Zelle, Larson & Kaplan by Paul L. Gingras and Thomas L. Hamlin, Minneapolis, Minn., for Wausau Ins. Co.

Gofrank & Kelman, Barry M. Kelman, Southfield, Mich., for Travelers; Dickinson, Wright, Moon, Van Dusen & Freeman, H.G. Sparrow, III, Detroit, Mich., of counsel.

Harvey, Kruse, Westen & Milan, P.C. by Paul S. Koczkur, Detroit, Mich., for Integrity Ins. Co., Mission Ins. Co. and Mission Nat.

Simon, Deitch, Tucker & Friedman by Peter B. Kupelian, Southfield, Mich., for Zurich Am. Ins. Co.

Leonard B. Schwartz, Southfield, Mich., for Royal Indem.

Buchalter, Nemer, Fields, Chrystie & Younger by Deborah A. Pitts and Robert A. Zeavin, Los Angeles, Cal., and Kerr, Russell & Weber by James R. Case, Detroit, Mich., for AIU Ins. Co. and Highland Ins. Co.

Charles C. Cheatham, Detroit, Mich., for American Employers Ins. Co.

Sullivan, Ward, Bone, Tyler, Fiott & Asher by David M. Tyler, Detroit, Mich., and Pretzel & Stouffer by Samuel B. Issacson, Chicago, Ill., for Prudential Re–Insurance Co.

Garan, Lucow, Miller, Seward, Cooper & Becker, P.C. by Thomas F. Myers, Detroit, Mich., and Lord, Bissell & Brook by Andrea Sykes Foote, Chicago, Ill., for Certain Underwriters at Lloyd's, London, and London Market Ins. Co.

Kitch, Saurbier, Drutchas, Wagner & Kenney by Stephen M. Kelley, Detroit, Mich., Adams, Duque & Hazeltine by Mitchell L. Lathrop, San Diego, Cal., for St. Paul Fire & Marine Ins. Co.

Kerr, Russell & Weber by James R. Case, Detroit, Mich., Adams, Duque & Hazeltine by Mitchell L. Lathrop, San Diego, Cal., for Federal Ins. Co.

Miller, Canfield, Paddock & Stone by Michael W. Hartmann, Detroit, Mich., and Crinker, Biddle & Reath by Timothy C. Russell, Wilson M. Brown, III, Patricia A. Gotschalk, Washington, D.C., for Am. Motorists, Am. Manu. Mut. and Lumbermen's Mut.

Cummings, McClorey, Davis & Acho by Bernard P. McClorey, Ronald G. Acho and T. Joseph Steward, Livonia, Mich., for Hartford Acc. & Indem. Ins. Co.

Pepper, Hamilton & Scheetz by Scott L. Gorland and Claudia V. Babiarz, Detroit, Mich., Siff, Newman, Rosen & Parker by Stephen Jacobs, New York City, for First State Ins. Co. and New England Reinsurance Corp.

Martin, Bacon & Martin, P.C. by James N. Martin, Thomas G. McHugh and Victor Van Kamp, Mt. Clemens, Mich., for Pacific Employers Ins. Co.

Deneberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald by William Jamieson and David Bocan, Southfield, Mich., for Northbrook Excess and Surplus Ins. Co. ("NESCO") n/k/a Allstate Ins. Co.

Highland & Currier, P.C. by J.R. Zanetti, Jr., Southfield, Mich., for Transport Indem. Co.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Plaintiff insurers, Fireman's Fund Insurance Companies and American Insurance Company, brought this action for declaratory judgment against their insureds Ex–Cell–O Corporation, McCord Gasket Corporation, and Davidson Rubber Company (collectively "Policyholders"), and two other insurers of Policyholders, Travelers Insurance Company and Employers Insurance of

Wausau. Policyholders, in turn, filed a third-party complaint seeking declaratory judgment against Travelers, Wausau, and additional insurers.[1]

The parties seek a declaration of their respective rights and obligations under comprehensive general liability and excess liability insurance policies because of the manner in which Policyholders disposed of hazardous and toxic wastes. I have jurisdiction based upon diversity of citizenship and the Declaratory Judgment Act. 28 U.S.C. §§ 1332 & 2201(b).[2]

## I. PROCEDURAL AND FACTUAL BACKGROUND

Ex–Cell–O is a Michigan corporation with its principal place of business in Troy, Michigan. It acquired McCord as a wholly-owned subsidiary in 1978. McCord is a Michigan corporation with its principal place of business in Detroit, Michigan. Davidson, a wholly-owned subsidiary of McCord, is a Delaware corporation with its principal place of business in New Hampshire. Policyholders manufacture a diverse range of products such as aerospace components, automotive parts, machine tools, ordnance equipment, packaging systems, and precision industrial products.

### A. *Claims Against Policyholders*

There are a variety of environmental claims against Policyholders, ranging from notices of their potential responsibility for environmental contamination to actions for reimbursement for the costs of cleanup of contaminated sites.

Policyholders have received notices from the United States Environmental Protec-

tion Agency (EPA) and state agencies that they may be potentially responsible for environmental contamination at a number of sites (so-called "potentially responsible party" or PRP letters), pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601–57, and state statutes.

Policyholders have also received notices of claims for reimbursement for costs incurred in cleaning up environmental contamination. The EPA has notified Policyholders of an immediate removal action at one site for which they are potentially responsible, pursuant to § 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1). One state agency has filed an action seeking reimbursement for its costs of cleaning up a contaminated site.

Policyholders, in turn, notified their insurers of these claims and of their contention that their insurers are liable under the comprehensive general liability policies. Policyholders' insurers denied liability. Fireman's Fund and American initiated the present action.

### B. *History and Procedural Posture of the Action*

Policyholders moved for partial summary judgment July 1987, contending that their insurers had a duty to defend them against the claims. Insurers argued that they had no duty to defend until Policyholders became defendants in a traditional lawsuit for money damages. I held that the duty to defend was not so restricted, but extended to actual or threatened use of legal process to coerce payment, and to claims for cleanup of environmental contamination. 662 F.Supp. 71, 75 (E.D.Mich.1987).

1. AIU Insurance Company, American Employers Insurance Company, American Manufacturers Mutual Insurance Company, American Motorists Insurance Company, Associated International Insurance Company, certain underwriters at Lloyd's, London and London Market Insurance Companies, Federal Insurance Company, First State Insurance Company, Highlands Insurance Company, Integrity Insurance Company, Lumberman's Mutual Casualty Company, Midland Insurance Company, Mission Insurance Company, New England Reinsurance Corporation, Northbrook Excess and Surplus Insurance Company (successor to Northbrook Insur-

ance Company), Pacific Employers Insurance Company, Prudential Re–Insurance Company, Royal Indemnity Company, St. Paul Fire and Marine Insurance Company, The Hartford Accident and Indemnity Insurance Company, Transport Indemnity Company, and Zurich Insurance Company.

2. I find the exercise of jurisdiction over this action for declaratory judgment proper in accordance with *Grand Trunk Western Railroad Company v. Consolidated Rail Corporation,* 746 F.2d 323, 326 (6th Cir.1984).

Insurers also argued that they had no duty to defend because of a clause in some policies excluding coverage for pollution ("pollution exclusion"). I found that this determination required additional facts and I did not reach the issue. I held that the insurers had a duty to defend Policyholders against potential liability for their alleged environmental contamination. 662 F.Supp. at 76. I did not address the issue of coverage. I dealt only with the insurers' duty to defend.

The issue of coverage is not before me. I deal solely with the interpretation of the policies. The question of coverage awaits the application of this interpretation to the facts of this case.

The present motions for partial summary judgment arise from Policyholders' motion to compel discovery. Policyholders seek to compel discovery of a broad range of extrinsic evidence in the control of the insurers and a trade organization regarding the interpretation of the pollution exclusion. Insurers move for protective orders.

At hearing June 20, 1988, I held that the "parol evidence" rule precluded discovery of evidence of antecedent negotiation and interpretation unless I found the policies ambiguous. *Goodwin, Inc. v. Orson E. Coe Pontiac, Inc.*, 392 Mich. 195, 204–11, 220 N.W.2d 664, 668–71 (1974). Policyholders and Wausau move for partial summary judgment on various issues. It is these motions I now address.[3]

### C. *Sites*

Policyholders notified their insurers of their potential responsibility for environ- mental contamination damage at twenty-three sites in nine states. These sites ranged from Davidson's own plant, to waste disposal or recycling companies, to municipal and private landfills. The twenty-three sites are:[4] Alburn Incinerator (Chicago, Illinois), Canons Engineering Corp.—Bridgewater (Bridgewater, Massachusetts), Canons Engineering Corp.—Plymouth (Plymouth, Massachusetts), Cardinal Landfill (Farmington, New Hampshire), Charles George Land Reclamation Trust Landfill (Tyngsboro, Massachusetts), City Chemical (Orlando, Florida), Clare Municipal Water Supply (Clare, Michigan), Conservation Chemical Company (Gary, Indiana), Conservation Chemical Company (Kansas City, Missouri), Davidson Rubber Company plant (Farmington, New Hampshire), Dover Municipal Landfill (Dover, New Hampshire), Enviro–Chem (Zionsville, Indiana), Keefe Environmental Services (Epping, New Hampshire), Liquid Disposal, Inc. (Shelby Township, Michigan), Ottati & Goss (Kingston Steel Drum) (Kingston, New Hampshire), Pagel's Landfill (Rockford, Illinois), QuVoe Industries, Inc., Refinery Products Facility (Schiller Park, Illinois), Re–Solve, Inc. (Dartmouth, Massachusetts), Silresim Chemical Co. (Lowell, Massachusetts), Springfield Municipal Landfill (Springfield, Vermont), Tinkham Garage (Londonderry, New Hampshire), Union Chemical Co. (Union, Maine), and Wayne Reclamation & Recycling, Inc. (Columbia City, Indiana).

### D. *Settlement: Parties and Sites No Longer In The Case*

Policyholders have negotiated a settle-

---

**3.** Before me are Wausau's motion for partial summary judgment and Policyholders' five motions for partial summary judgment: (1) that "neither expected nor intended" in the definition of "occurrence" in Wausau's policies is ambiguous as a matter of law and should be construed in favor of the Policyholders; (2) that the pollution exclusion in Wausau's policies is ambiguous as a matter of law and should be construed in favor of the Policyholders; (3) that the pollution exclusion clause does not apply to the New Hampshire sites; (4) that there are no aggregate limits in the policies that Wausau sold to the Policyholders; and (5) that the pollution exclusion does not apply to eleven of the remaining twelve Wausau sites at issue. Additionally, Policyholders renew their motion dated October 30, 1987 for an order allocating burdens of proof. Also before me are Policyholders' October 22, 1987 motion to construe "neither expected nor intended" and Wausau's July 12, 1988 motion for an order declaring relevant portions of the policies unambiguous.

For the purpose of determining ambiguity, Policyholders' motion that there are no aggregate limits is premature. Additionally, Policyholders' motion that the pollution exclusion does not apply to eleven of twelve sites requires an application of the interpretation of the policies to facts which have yet to be presented. I do not consider either motion here.

**4.** *See also* 662 F.Supp. at 74.

ment with some of their insurers,[5] leaving only third-party defendant insurers AIU, American Employers, First State, Hartford, Highlands, New England, and Wausau. Twelve of the original twenty-three sites remain. They are, for the most part, those connected with McCord and Davidson. A chart sets forth the remaining sites, the years for which coverage is claimed, and the primary and excess liability insurers and policies remaining in the case (Appendix).

## II. LEGAL ISSUES RAISED

The motions present common issues. These issues are: (1) whether the word "sudden" in the pollution exclusion has a temporal aspect, meaning "brief, momentary; lasting only a short time"; (2) whether "expected" damage is to be determined by an objective standard; (3) whether the pollution exclusion applies to the sites in New Hampshire; and (4) who has the burden of proving whether the "sudden and accidental" exception to the pollution exclusion applies. It is to these issues I now turn.

## III. POLICY LANGUAGE AT ISSUE

The Wausau policies [6] ("policies") provide that Wausau will indemnify Policyholders for all sums which Policyholders become obligated to pay as damages because of property damage to which the insurance applies caused by an occurrence. The insuring agreement of the policies at issue reads in relevant part as follows:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies, caused by an occurrence....

"Occurrence" is defined as follows:

> [O]ccurrence means an accident, including injurious exposure to conditions, which results ... in ... property damage neither expected nor intended from the standpoint of the insured....

Beginning with policy no. 1724 in 1973, the definition of "occurrence" was slightly altered:

> [O]ccurrence means an accident, including continuous or repeated exposure to conditions....

Beginning in 1971, with policy no. 1722, the policies include a pollution exclusion which excludes coverage for bodily injury or property damage caused by pollution, unless the discharge or dispersal of the pollutants is "sudden and accidental." The pollution exclusion, the standard exclusion in the comprehensive general liability policies, reads:

> This insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

## IV. THE MEANING OF "SUDDEN AND ACCIDENTAL"

### A. *Policyholders' Arguments*

 Policyholders argue that the "sudden and accidental" exception to the pollution exclusion is ambiguous and should be construed in their favor to mean "neither expected nor intended from the standpoint of the insured." Policyholders

---

**5.** The settling insurers are, for the most part, those who insured Ex–Cell–O before it acquired McCord and Davidson: American Manufacturers, American Motorists, certain underwriters at Lloyds, Federal, Fireman's Fund, London Market, Lumberman's, Northbrook, Pacific Employers, Prudential, Royal, St. Paul Fire & Marine, Transport, Travelers, and Zurich.

Three insurers are in liquidation and proceedings have been stayed as to them: Integrity,

Midlands, and Mission. Associated International has not answered or otherwise participated in this action.

**6.** *Only Wausau's policies are at issue here. I refer to the policies when necessary by the first four digits. The policies are numbered 172x00040499.*

argue three points:[7] (1) The words "sudden and accidental" are inherently conflicting; (2) The preferred definition of the word "sudden" is "unexpected and unintended"; and (3) The law in Michigan defines the word "sudden" as "unexpected." Policyholders also argue that the pollution exclusion only applies to "active polluters" who specifically intended to cause the damage.

Wausau argues that the words "sudden and accidental" are not ambiguous, and that "sudden" means "happening quickly" as opposed to "gradually."

An insurance policy is a contract. A cardinal rule in its interpretation is that the policy should be read to give effect to the parties' intent. *Eghotz v. Creech*, 365 Mich. 527, 530, 113 N.W.2d 815, 816 (1962) ("[A] policy of insurance is much the same as any other contract. It is a matter of agreement by the parties. The courts will determine what that agreement was and enforce it accordingly."); *Murphy v. Seed–Roberts Agency, Inc.*, 79 Mich.App. 1, 7–9, 261 N.W.2d 198, 201 (1977). The parties' intent is to be determined by the policy's language. *Henry v. J.B. Publishing Co.*, 54 Mich.App. 409, 412–13, 221 N.W.2d 174, 175–76 (1974).

If ambiguity exists, the court should resolve the ambiguity against the drafter, and thus (usually) in favor of the insured. *Liberty Mut. Ins. Co. v. Vanderbush Sheet Metal Co.*, 512 F.Supp. 1159, 1170 (E.D. Mich.1981); *Petovello v. Murray*, 139 Mich. App. 639, 642, 362 N.W.2d 857, 858 (1984). The policy should be construed in favor of the insured if ambiguity "fairly" or "rea-

sonably" exists. *Raska v. Farm Bureau Mut. Ins. Co. of Michigan*, 412 Mich. 355, 362, 314 N.W.2d 440, 441 (1982) ("A contract is said to be ambiguous when its words may reasonably be understood in different ways."); *Auto–Owners Ins. Co. v. Zimmerman*, 162 Mich.App. 459, 461, 412 N.W.2d 925, 927, *app. denied* 428 Mich. 920 (1987) ("If a contract fairly admits of but one interpretation it is not ambiguous."); *Petovello*, 139 Mich.App. at 642, 362 N.W.2d at 858; *cf. United States Fidelity and Guar. Co. v. Star Fire Coals Inc.*, 856 F.2d 31, 34 (6th Cir.1988), *quoting American Motorists Ins. Co. v. General Host Corp.*, 667 F.Supp. 1423 (D.Kan.1987) ("We fully agree with the conclusion that this 'language is clear and plain, something only a lawyer's ingenuity could make ambiguous.' ").

First, Policyholders argue that the words "sudden and accidental" are inherently conflicting. To reach this conclusion, they argue: "Sudden" is not defined in the policies. "Accident" is defined in the definition of "occurrence", which states that "occurrence means an *accident, including continuous or repeated exposure to conditions, . . . .*" (Policyholders' emphasis). Suppling this definition of accident to the "sudden and accidental" exception produces the following:

> This exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental, including continuous or repeated exposure to conditions.

Policyholders have not been the first to advance such an argument. It has been accepted by some courts.[8]

**7.** Two of Policyholders' arguments may be disposed of here. First, they argue that conflicting judicial interpretations establish ambiguity as a matter of law, *citing Bayersdorfer v. Massachusetts Protective Ass'n*, 20 F.Supp. 489, 492 (S.D. Ohio 1937), *aff'd sub nom. Massachusetts Protective Ass'n v. Bayersdorfer*, 105 F.2d 595 (6th Cir.1939), and *McLaughlin v. Connecticut Gen. Life Ins. Co.*, 565 F.Supp. 434, 450 (N.D.Cal. 1983). The cases do not go so far. Conflicting judicial interpretations may indeed be some evidence of ambiguity. But if the policies are unambiguous, conflicting judicial interpretations do not prevent me from so finding. Second, they argue that because the phrase "sudden and accidental" is not defined in the policies, it

is ambiguous. The absence of a definition in and of itself does not establish ambiguity.

**8.** *See, e.g., New Castle County v. Hartford Accident & Indem. Co.*, 673 F.Supp. 1359, 1362–65 (D.Del.1987); *United States v. Conservation Chem. Co.*, 653 F.Supp. 152, 204 (W.D.Mo.1986); *City of Northglenn v. Chevron U.S.A., Inc.*, 634 F.Supp. 217, 221–22 (D.Colo.1986); *Lansco, Inc. v. Department of Env'l Protection*, 138 N.J.Super. 275, 282, 350 A.2d 520, 524 (Ch. Div. 1975), *aff'd* 145 N.J. Super. 433, 368 A.2d 363 (App.Div. 1976), *cert. denied* 73 N.J. 57, 372 A.2d 322 (1977); *Jackson Township Municipal Utilities Auth. v. Hartford Accident & Indem. Co.*, 186 N.J.Super. 156, 451 A.2d 990, 994 (Law Div.

I find Policyholders' argument without merit. Policyholders misread the policy: the word "accident" is not defined in the policy as "including continuous or repeated exposure to conditions." The language out of which Policyholders attempt to wrest this definition of "accident" is in fact the definition of "occurrence."

"Occurrence" is defined to mean an accident. The policy states that an occurrence is not restricted to conditions of short duration, a possible inference from the connotation of "accident".[9] To negate this inference, the policy states that an occurrence includes "continuous or repeated exposure to conditions."

■ I reject Policyholders' premise that "accident" is defined as "continuous or repeated exposure to conditions", and their conclusion that the words "sudden and accidental" are ambiguous or conflicting. I find that the words "sudden and accidental" are not in conflict.

I find instructive a recent opinion of the United States Court of Appeals for the Sixth Circuit in *Star Fire Coals*, 856 F.2d 31 (1988). In that case the insurer advanced the same argument that the words "sudden and accidental" are ambiguous and mean "unexpected and unintended". The court rejected this claim of "ambiguity" created by the interchange of the definition of occurrence and the pollution exclusion. The court held that the word "sudden" in the pollution exclusion is to be given its everyday, temporal meaning.

We believe the everyday meaning of the term "sudden" is exactly what this clause means. We do not believe that it is possible to define "sudden" without reference to a temporal element that joins together conceptually the immediate and the unexpected.... We believe that the phrase "sudden and accidental" is not a synonym for "unexpected and unintended," and that it should not be defined by reference to whether the accident or damages were expected.

856 F.2d at 34.

■ Second, Policyholders argue that the "first, and thus preferred" definition of "sudden" is "happening or coming unexpectedly".[10] The separation of the senses of a word by numbers and letters, however, does not "evaluate or establish an enduring hierarchy of importance among them. The best sense is the one that most aptly fits the context of an actual genuine utterance".[11] Furthermore, if merely applying a definition in the dictionary suffices to create ambiguity, no term would be unambiguous. The interpretation of contractual language is not mechanical.

■ Third, Policyholders argue that the interpretation of the word "sudden" as "unexpected and unintended" is supported in Michigan law, *citing Jonesville Products, Inc. v. Transamerica Insurance*

---

1982); *Allstate Ins. Co. v. Klock Oil Co.*, 73 A.D.2d 486, 426 N.Y.S.2d 603, 605 (N.Y.App.Div. 1980); *Buckeye Union Ins. Co. v. Liberty Solvents & Chem. Co.*, 17 Ohio App.3d 127, 477 N.E.2d 1227, 1233–34 (1984); *United Pacific Ins. Co. v. Van's Westlake Union, Inc.*, 34 Wash.App. 708, 712, 664 P.2d 1262, 1265 *rev. denied* 100 Wash. 2d 1018 (1983).

The Supreme Court of North Carolina, in an excellent discussion of the "sudden and accidental" exception, traces this interpretation to a commentator's gloss on the then new pollution exclusion. *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 340 S.E.2d 374, 380 n. 4 (1986), *citing* 3 R. Long, *Law of Liability Insurance* App–58 (1973).

9. *E.g., Webster's Third New International Dictionary of the English Language Unabridged* s.v. "accident", 2a (1986):

> *[U]su. sudden* event or change occurring without intent or volition through carelessness,

unawareness, ignorance, or a combination of causes and producing an unfortunate result. (Emphasis added). *See also American Casualty Co. v. Minnesota Farm Bureau Serv. Co.*, 270 F.2d 686, 691 (8th Cir.1959) (repeated explosions over a period of years at fertilizer plant not accidental); *Arthur A. Johnson Corp. v. Indemnity Ins. Co. of No. Am.*, 6 A.D.2d 97, 100, 175 N.Y.S.2d 414, 417 (1958), *aff'd on other grounds* 7 N.Y.2d 222, 196 N.Y.S.2d 678, 164 N.E.2d 704 (1959) ("[A]ccident, according to generally accepted definitions, is a sudden, fortuitous mischance").

10. *Citing Webster's New Collegiate Dictionary* (9th ed. 1987).

11. *Webster's Third New International Dictionary of the English Language Unabridged* at 17a (1986).

*Group,* 156 Mich.App. 508, 402 N.W.2d 46 (1986), *app. denied* 428 Mich. 897 (1987). In *Jonesville* the Michigan Court of Appeals held:

> The circuit court erred in finding that the allegation of "continuous" negligent discharge of waste onto Jonesville's property took Count I of the Lapes' complaint out of defendant's exception for "sudden and accidental" release. It is possible that the releases could have been sudden, i.e., unexpected, and accidental, i.e., unintended, and thus outside the exclusion.

156 Mich.App. at 512, 402 N.W.2d at 48. This is the extent of the court's discussion. The decision is unsupported by reasoning or authority, is contrary to the better reasoned, more recent decisions interpreting "sudden and accidental," and is against the more reasonable interpretation of the word "sudden."

I am of the opinion that the Michigan Supreme Court would hold that "sudden" includes a temporal aspect. Thus, I find *Jonesville* not binding. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1968); *Grantham and Mann, Inc. v. American Safety Prod., Inc.,* 831 F.2d 596, 608–09 (6th Cir.1987); *cf. Abendschein v. Farrell,* 11 Mich.App. 662, 680–85, 162 N.W.2d 165, 173–76 (1968) (Levin, J., dissenting) (on the Michigan Court of Appeals' power and obligation to overturn precedent).

Policyholders also argue that the pollution exclusion does not apply to "active" (versus "passive") polluters that specifically intended to cause the damage. *City of Northglenn,* 634 F.Supp. at 221–22; *Niagara County v. Utica Mut. Ins. Co.,* 103 Misc.2d 814, 427 N.Y.S.2d 171 (N.Y. Sup.Ct.1980), *aff'd* 80 A.D.2d 415, 439 N.Y.S.2d 538 (1981); *Jackson Township,* 451

A.2d at 994; *Van's Westlake Union,* 664 P.2d at 1264.[12]

Insofar as the term "active polluter" is a rubric for analyzing whether coverage exists under the terms of the policy, it is at best unnecessary. If, however, the term imports some additional criteria not found in the policy, it is not part of the parties' contract. Policyholders' argument is not persuasive.

### B. *The Meaning of "Sudden"*

In the context of the pollution exclusion, there are two relevant semantic components of the word "sudden": unexpectedness and briefness. The *Oxford English Dictionary* (1971) defines "sudden" in relevant part as follows:

> 1. Of actions, events, conditions: Happening or coming without warning or premonition; taking place or appearing all at once.
>
> In some contexts the implication is rather "unexpected, unforeseen, unlooked-for". . . .
>
> 8. Brief, momentary, lasting only a short time.

"Accidental" means "unexpected or unintended." 1A Appleman, *Insurance Law and Practice* § 360 at 452–53 (1981). Policyholders' proposed interpretation that the word "sudden" means "unexpected" would make surplusage the word "accidental".

Contracts should not be interpreted to render any term or clause surplusage. *Associated Truck Lines v. Baer,* 346 Mich. 106, 110, 77 N.W.2d 384, 386 (1956); *Geerdes v. St. Paul Fire & Marine Ins. Co.,* 128 Mich.App. 730, 734, 341 N.W.2d 195, 197 (1983), *citing Draper v. Nelson,* 254 Mich. 380, 383, 236 N.W. 808, 808 (1931), ("No word in a contract should be

---

**12.** The distinction between "active" and "passive" polluters originates from *Niagara County,* in which the court held that the pollution exclusion in the county's policy did not preclude the insurer's duty to defend the county against an action regarding hazardous waste disposal at Love Canal, where the county merely owned the land. Interpreting the legislative history behind the statutorily mandated pollution exclusion, the court suggested that it was meant to apply to "industry-related activities." 427 N.Y.S.2d at

174. Subsequent cases have ignored the statutory basis of *Niagara County*'s holding, and extended the concept beyond its more limited holding. *See, e.g., Jackson Township,* 451 A.2d at 991–92, and *Van's Westlake Union,* 664 P.2d at 1264–66. *See* Note, *The Pollution Exclusion Clause Through the Looking Glass,* 74 Geo. L.J. 1237, 1271–73 (1986) ("Whatever little analytical value the labels might have had in the *Niagara County* context, they have no value once the facts change.").

rejected as surplusage if it serves some reasonable purpose."). This principle should apply with greater force when the contract has been carefully drafted, as this one has. *See* Note, *The Pollution Exclusion Through the Looking Glass,* 74 Geo. L.J. 1237, 1251–53 (1986). Reading the contract as a whole to avoid surplusage is essential in determining if ambiguity reasonably exists. *Murphy,* 79 Mich.App. at 8, 261 N.W.2d at 201 ("Courts should attempt to harmonize all parts of a contract of insurance so as to give effect to each clause contained therein. Such a reading of the contract as a whole may be necessary to determine whether ambiguity exists in particular clauses.") (citations omitted). Accordingly, I hold that "sudden" cannot mean "unexpected and unintended."

If the drafters had meant "unexpected and unintended from the standpoint of the insured", it is reasonable to assume that they would have said so explicitly (as in the definition of "occurrence"). *See George Backer Management Corp. v. Acme Quilting Co., Inc.,* 46 N.Y.2d 211, 413 N.Y.S.2d 135, 138, 385 N.E.2d 1062, 1065 (1978) ("Had that been their intention, surely no problem of draftsmanship would have stood in the way of its being spelled out.").

Increasingly, the courts have rejected arguments similar to that being made here by Policyholders that the phrase "sudden and accidental" is ambiguous and are holding that "sudden" includes a temporal aspect. *E.g., United States Fidelity and Guaranty Co. v. Star Fire Coals, Inc.,* 856 F.2d 31 (6th Cir.1988); *Hayes v. Maryland Casualty Co.,* 688 F.Supp. 1513, 1515 (N.D. Fla.1988); *Borden, Inc. v. Affiliated FM Ins. Co.,* 682 F.Supp. 927, 929–30 (S.D.Ohio 1987); *Detrex Chem. Indus., Inc. v. Employers Ins. of Wausau,* 681 F.Supp. 438, 457 (N.D.Ohio 1987); *Centennial Ins. Co. v. Lumberman's Mut. Casualty Co.,* 677 F.Supp. 342, 347–48 (E.D.Pa.1987); *Claussen v. Aetna Casualty & Sur. Co.,* 676 F.Supp. 1571, 1573–74 (S.D.Ga.1987); *American Motorists Ins. Co. v. General Host Corp.,* 667 F.Supp. 1423, 1427–29 (D.Kan.1987); *International Minerals & Chem. Corp. v. Liberty Mut. Ins. Co.,* 168 Ill.App.3d 361, 119 Ill.Dec. 96, 105–107, 522 N.E.2d 758, 767–69 (1988); *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.,* 315 N.C. 688, 340 S.E.2d 374, 380–82, *reh. denied* 316 N.C. 386, 346 S.E.2d 134 (1986); *Transamerica Ins. Co. v. Sunnes,* 77 Or.App. 136, 711 P.2d 212, 214 (1985), *rev. denied* 301 Or. 76, 717 P.2d 631 (1986); *Techalloy Co., Inc. v. Reliance Ins. Co.,* 338 Pa.Super. 1, 487 A.2d 820, 826–27 (1984); *State v. Mauthe,* 142 Wis.2d 620, 419 N.W.2d 279, 280–82 (Wis.Ct.App.1987); *see also Great Lakes Container Corp. v. National Union Fire Ins. Co.,* 727 F.2d 30, 33 (1st Cir.1984); *American Mut. Liab. Ins. Co. v. Neville Chem. Co.,* 650 F.Supp. 929, 933 (W.D.Pa.1987); *American States Ins. Co. v. Maryland Cas. Co.,* 587 F.Supp. 1549, 1553 (E.D.Mich.1984).

This growing consensus that "sudden" does not mean "unexpected and unintended" is additional support for Wausau's interpretation. The pollution exclusion is a standard exclusion found in the standard comprehensive general liability policy. Standardized agreements should be interpreted similarly. *Cf. Restatement (Second) of Contracts* § 211(2) (1981) ("Such a writing [standardized agreement] is interpreted whenever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.").

▇▇ Accordingly, I hold that "sudden" in the pollution exclusion includes the temporal component of briefness, and means "brief, momentary, or lasting only a short time."[13] "Sudden" is to be contrasted with "gradual." The focus of the pollution exclusion is on the discharge or release of pollutants into the environment. When the discharge or release of a pollutant is brief or lasts only a short time, it comes within the meaning of the first element of the

---

**13.** Whether or not "sudden" also "joins together conceptually" the semantic component of unexpectedness with that of briefness, as the Sixth Circuit held in *Star Fire Coals,* 856 F.2d at 34, is not consequential—unexpectedness is conveyed by the word "accidental."

"sudden and accidental" exception to the pollution exclusion.

## V. STANDARD TO DETERMINE "EXPECTED" DAMAGES

Wausau moves for partial summary judgment on the issue of the standard to be applied in determining whether an insured "expected or intended" damage (the definition of "occurrence"). Based upon the interpretation of the pollution exclusion which I adopt, I need not now decide the question whether the insured "expected" damage is to be determined by an objective standard. *See, e.g., City of Carter Lake v. Aetna Casualty & Sur. Co.,* 604 F.2d 1052 (8th Cir.1979). If there are facts which bring the exception to the pollution exclusion into being, I would, of course, be squarely faced with this issue.

## VI. APPLICABLE STATE LAW

Policyholders also move for partial summary judgment claiming that the pollution exclusion does not apply to the New Hampshire sites.[14] They argue that until 1985 the New Hampshire Commissioner of Insurance rejected the pollution exclusion, and thus a state policy against the clause exists. Policyholders argue that a policy provision unapproved by the Commissioner is void. Wausau argues that the applicable law is Michigan law, that the pollution exclusion is valid in Michigan, and is thus applicable to the New Hampshire sites.

In support of their position, Policyholders present the affidavit of a rate-analyst trainee. It stated that Wausau's file contains letters showing that the Commissioner rejected Wausau's policy forms with the pollution exclusion.

The evidence of a policy of New Hampshire against the pollution exclusion is equivocal at best. Wausau refers to the deposition testimony of Norman Champagne, former Division Director of the

Property and Liability Division of the New Hampshire Insurance Department. His testimony reveals that the Insurance Department did not object to the pollution exclusion *per se;* rather, it objected to the insurers effecting a broad change in coverage by an automatic filing. Champagne testified that the department would "invariably" approve a policy containing the pollution exclusion if it were filed under the New Hampshire "consent to rate change statute". Champagne Transcript at 39–41 & 72–77. New Hampshire statutes provide for deviations from approved forms and rates if the insured and insurer so agree.[15] I find that if there was a state policy in New Hampshire against the pollution exclusion, it was weak. *Cf. Restatement (Second) of Contracts* § 178(3)(a) (1981) ("In weighing a public policy against enforcement of a term, account is taken of the strength of that policy as manifested by legislation or judicial decision.").

Considering the facts in the light most favorable to Wausau, Policyholders have not shown that New Hampshire had a state policy against the pollution exclusion. *Watkins v. Northwestern Ohio Tractor Pullers Ass'n,* 630 F.2d 1155, 1158 (6th Cir.1980).

Additionally, as a matter of law, even if there were such a policy it would not render the pollution exclusion in these policies inapplicable to the New Hampshire sites.

There is no dispute concerning the Commissioner's power to regulate the insurance business conducted in New Hampshire. He may, consistent with his authority, disapprove policy language and prohibit such language in policies offered for sale within New Hampshire. Policyholders, however, ask me to extend his power to these policies—made between a Wisconsin insurer and a Michigan insured, to be performed in Michigan, and insuring risks in nine states.

**14.** Cardinal Landfill, Davidson Rubber Company plant, Dover Landfill, Keefe Environmental Services, Ottati & Goss, and Tinkham Garage. Two Wausau policies, nos. 1722 and 1723, state that the pollution exclusion does not apply to New Hampshire. Wausau does not seek to enforce the pollution exclusion with respect to

the New Hampshire sites for the periods of these two policies. The remaining policies, however, contain no such language.

**15.** New Hampshire Rev.Stat.Ann. §§ 413:2 and 414:4(IX) (1983).

■ The applicable state law, as Policyholders themselves have argued elsewhere,[16] is that of Michigan. Since this action is brought in this court based upon diversity of citizenship, the forum state's choice of law rules apply. Michigan continues to follow the *Restatement (First) of Conflict of Laws* rule that the nature and effect of a contract are determined by the law of the place where the contract was entered into. *Restatement (First) of Conflict of Laws* § 311 (1934); *e.g., Insurance Co. of No. Am. v. Forty–Eight Insulations, Inc.* 451 F.Supp. 1230, 1237 (E.D. Mich.1978), *aff'd* 633 F.2d 1212 (6th Cir. 1980). If the place of performance differs, however, the law of that place governs. *George Realty Co. v. Gulf Refining Co.,* 275 Mich. 442, 451, 266 N.W. 411, 414–15 (1936). *See generally Liberty Mut. Ins. Co. v. Vanderbush Sheet Metal Co.,* 512 F.Supp. 1159, 1166–69 (E.D.Mich.1981).

The parties agree that the place of performance is the state of Michigan.[17] Thus, the applicable law is that of Michigan. Michigan has no policy against the pollution exclusion. *E.g., Grant–Southern Iron & Metal Co. v. CNA Ins. Co.,* 669 F.Supp. 798, 800 (E.D.Mich.1986), *dismissed without opinion* 838 F.2d 470 (6th Cir.1988); *American States Ins. Co. v. Maryland Cas. Co.,* 587 F.Supp. 1549, 1553 (E.D.Mich. 1984).

Accordingly, I hold that the pollution exclusion is applicable to the New Hampshire sites.[18]

## VII. BURDEN OF PROOF

Policyholders argue broadly (and incorrectly) that an insurer has the burden of proof on all issues. The real point of contention, however, is found in Wausau's argument that the insured has the burden of

proving that the "sudden and accidental" exception to the pollution exclusion applies.[19]

■ Among the factors to be considered in allocating the burden of proof is an estimate of the probabilities, fairness, and special policy considerations. *Johnson v. Austin,* 406 Mich. 420, 432, 280 N.W.2d 9, 11 (1979) (burden of producing evidence); *Diedrich v. Harten,* 103 Mich.App. 126, 131, 302 N.W.2d 618, 620 (1981). These elements weigh heavily in Wausau's favor.

First, an estimate of the probabilities points towards allocating the burden to Policyholders. To claim that they come within the "sudden and accidental" exception to the pollution exclusion, Policyholders must contend that the more unusual event occurred—that the discharge or release of pollutants was sudden and accidental.

Second, fairness weighs heavily in Wausau's favor. Policyholders possess the information pertaining to their activities. It would impose a undue burden on Wausau to require it to ferret out evidence of Policyholders' sudden and accidental discharge of pollutants in twelve sites in four states over a period of seven years. Policyholders can more easily produce this evidence.

Third, special public policy considerations do not argue either for Policyholders or Wausau. The courts are split as to whether the insurer or the insured has the burden of proving an exception to an exclusion. *See* 19 Couch, *Insurance* § 79:385 at 338 (2d ed. 1983). The one court which has considered the issue in this context held that the insured had the burden of proving that the "sudden and accidental" exception applied. *Fischer & Porter Co. v. Liberty*

---

**16.** Policyholders' reply memorandum demonstrating that the standard form insurance policies are ambiguous, dated July 18, 1988 at 4–5.

**17.** Policyholders' reply memorandum dated July 18, 1988 at 4–5; Wausau's consolidated memorandum of law in opposition to Policyholders' five separate motions, dated August 19, 1988 at 11–12.

**18.** This does not apply, of course, to the pollution exclusion in policies nos. 1721 and 1722, which by their terms make the pollution exclusion inapplicable to New Hampshire sites.

**19.** Neither party distinguishes between the burden of producing evidence and the burden of persuasion (or risk of nonpersuasion). *See, e.g.,* McCormick, *Evidence* 336 (3d ed. 1984); 9 Wigmore, *Evidence* 2485–89 (Chadbourn rev. 1981).

*Mut. Ins. Co.*, 656 F.Supp. 132, 140 (E.D. Pa.1986).

The burden of proof is properly placed upon Policyholders to prove that the "sudden and accidental" exception applies. Thus, I hold that Policyholders have the burden of proof, both the burden of producing evidence and the burden of persuasion, as to whether the "sudden and accidental" exception to the pollution exclusion applies.

An accompanying Order is hereby entered in accordance with this Opinion.

# 1330

APPENDIX

| SITE / YEAR | 1970 | 1971 | 1972 | 1973 | 1974 | 1975 | 1976 | 1977 | 1978 |
|---|---|---|---|---|---|---|---|---|---|
| Canons Bridgewater | | | | | ■ | ■ | ■ | ■ | ■ |
| Canons Plymouth | | | | | ■ | ■ | ■ | ■ | ■ |
| Cardinal | | | | | | | | ■ | ■ |
| Charles George | | | | | | | | ■ | ■ |
| Conserv Chem (KC) | | | | | | | | | ■ |
| Conserv Chem (Gary) | | | | | | | | | ■ |
| Davidson | ■ | ■ | ■ | ■ | ■ | | ■ | ■ | ■ |
| Dover | | | | | | | | | |
| Keefe | | | | | | | | | |
| Kingston | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ | |
| Silresem | | | | | | | | | |
| Tinkham Garage | | | | | | | | | ■ |
| Primary Carrier Policy No. | Wausau 1721 | Wausau 1722 | Wausau 1723 | Wausau 1724 | Wausau 1725 | Wausau 1726 | Wausau 1727 | Wausau 1728 | Wausau 1729 |
| Excess Carriers Policy No. | Am Empl A228500266 | | | First State 900305 | | | First State 681199 / Highlands 20067 | Highlands 20217 | First State 683658 / AIU 75106116 |

Note:
All Wausau policies are number 172x000040499
Policy periods may overlap the year

Key:
Period site used — ■
Pollution exclusion — ▨

## ORDER

The following motions of Third–Party Plaintiffs Ex–Cell–O Corporation, McCord Gasket Corporation, and Davidson Rubber Company ("Policyholders") and Third–Party Defendants AIU Insurance Company, American Employers Insurance Company, First State Insurance Company, The Hartford Accident and Indemnity Insurance Company, Highlands Insurance Company, New England Reinsurance Corporation, and Employers Insurance of Wausau having come before this Court:

1. Policyholders' motion to compel discovery dated May 25, 1988.

2. Hartford's motion for a protective order dated June 3, 1988.

3. First State and New England's motion for a protective order dated June 6, 1988.

4. American Employers' motion for a protective order dated June 10, 1988.

5. AIU and Highlands's motion for a protective order dated June 13, 1988.

6. Wausau's motion for partial summary judgment dated August 24, 1988.

7. Policyholders' motion for partial summary judgment that "neither expected nor intended" in the definition of "occurrence" in Wausau's policies is ambiguous as a matter of law and should be construed in favor of the Policyholders dated August 23, 1988.

8. Policyholders' motion for partial summary judgment that the pollution exclusion in Wausau's policies is ambiguous as a matter of law and should be construed in favor of the Policyholders dated August 23, 1988.

9. Policyholders' motion for partial summary judgment that the pollution exclusion clause does not apply to the New Hampshire sites dated August 23, 1988.

10. Policyholders' motion for partial summary judgment that there are no aggregate limits in the policies that Wausau sold to the Policyholders dated August 23, 1988.

11. Policyholders' motion for partial summary judgment that the pollution exclusion does not apply to eleven of the remaining twelve Wausau sites at issue dated August 23, 1988.

12. Policyholders' motion for a determination that "neither expected nor intended" excludes coverage only for damage that was specifically intended by the insured, dated October 22, 1987.

13. Policyholders' motion for an order allocating burdens of proof dated October 30, 1987.

14. Wausau's motion for an order declaring the policy unambiguous dated July 12, 1988.

15. Wausau's motion to extend the discovery cut-off date and trial date for ninety days, dated July 8, 1988.

Having considered the parties' briefs and memoranda in support, having heard the parties, and in accordance with my Memorandum Opinion dated December 12, 1988, I make the following dispositions of the motions before me:

I DENY without prejudice Policyholders' motion for partial summary judgment that there are no aggregate limits, their two motions for partial summary judgment concerning "neither expected nor intended" dated October 22, 1987 and August 23, 1988, and their motion for partial summary judgment that the Wausau policies do not apply to eleven of the twelve sites.

I DENY Policyholders' motion for partial summary judgment that the pollution exclusion is ambiguous, their motion allocating the burden of proof, and their motion for partial summary judgment that the pollution exclusion does not apply to the New Hampshire sites.

I GRANT Wausau's motion for partial summary judgment as to the meaning of "sudden", the applicable state law, and the burden of proving "sudden and accidental" discharge, and DENY without prejudice the remaining part.

I DENY with prejudice Policyholders' motion to compel discovery as to extrinsic evidence of the interpretation of the policies;

Accordingly, the motions for protective orders by AIU and Highlands, American Employers, First State and New England, and Hartford are moot.

Superseded and made moot are Wausau's July 12, 1988 motion to declare the policy unambiguous, and Wausau's motion to extend the discovery cut-off date.

IT IS SO ORDERED.