**FIREMAN'S FUND INSURANCE COMPANIES, Plaintiffs,**

v.

**EX–CELL–O CORPORATION, et al., Defendants.**

**EX–CELL–O CORPORATION, et al., Third–Party Plaintiffs,**

v.

**AIU INSURANCE COMPANY (Successor to American International Insurance Company), et al., Third–Party Defendants.**

Civ. A. No. 85–71371.

United States District Court, E.D. Michigan, S.D.

Sept. 12, 1989.

Jeffrey Silberfeld, Rivkin, Leff & Radler, Uniondale, N.Y., Michael G. Costello, Plunkett & Cooney, Detroit, Mich., for American Intern. Ins. Co.

Eugene R. Anderson, Lynn A. Stansel, Nicholas J. Zoogman, New York City, Robert B. Webster, Richard C. Sanders, Peter Metters, Hill, Lewis, Adams, Goodrich & Tait, Detroit, Mich., for Ex–Cell–O, McCord and Davidson.

Barry M. Kelman, Gofrank and Kelman, Southfield, Mich., H.G. Sparrow, III, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., Mary Vyskocil, Simpson, Thacher & Bartlett, New York City, for Travelers Ins.

John W. Henke, Gropman, Lebow & Tobin, Birmingham, Mich., Paul L. Gingras, Zelle & Larson, Minneapolis, Minn., for Wausau Ins. Co.

Paul S. Koczkur Harvey, Kruse, Westen & Milan, Detroit, Mich., for Integrity Ins. Co.

Peter B. Kupelian, Tucker & Rolf, Southfield, Mich., for Zurich American Ins. Co.

Leonard B. Schwartz, Sommers, Schwartz, Silver & Schwartz, Southfield, Mich., for Royal Indemnity.

Deborah A. Pitts, Robert A. Zeavin, Buchalter, Nemer, Fields, Chrystie & Younger, Los Angeles, Cal., James R. Case, Kenneth C. Harrison, Kerr, Russell and Weber, Detroit, Mich., for AIU Ins. Co. and Highland Ins. Co.

Charles C. Cheatham, Dwight Robinson, James G. Gross, MacArthur, Cheatham, Acker & Smith, Detroit, Mich., for American Employers Ins. Co.

David M. Tyler, Sullivan, Ward, Bone, Tyler, Fiott & Asher, Southfield, Mich., Michael G. Bruton, Michael J. Merlo, Pretzel, Stouffer, Chartered, Chicago, Ill., for Prudential Re–Insurance Co.

Andrea Sykes Foote, Lord, Bissell & Brook, Chicago, Ill., Thomas F. Myers, Garan, Lucow, Miller, Seward, Cooper & Becker, Detroit, Mich., for Certain Underwriters at Lloyd's, London and London Market Ins. Co.

Stephen M. Kelley, Kitch, Saurbier, Drutchas, Wagner & Kenney, Detroit, Mich., Mitchell L. Lathrop, Adams, Duque & Hazeltine, San Diego, Cal., for St. Paul Fire & Marine Ins. Co.

James R. Case, Kenneth C. Harrison, Kerr, Russell & Weber, Detroit, Mich., for Federal Ins. Co.

Michael W. Hartmann, Miller, Canfield, Paddock & Stone, Detroit, Mich., Timothy C. Russell, Wilson M. Brown, III, Patricia A. Gotschalk, Drinker, Biddle & Reath, Washington, D.C., for Am. Motorists, Am. Manu. Mut., Lumbermens Mut.

Paul S. Koczkur, Harvey, Kruse, Westen & Milan, Detroit, Mich., for Mission Ins. Co. and Mission Nat.

T. Joseph Seward, Bernard P. McClorey, Ronald G. Acho, Cummings, McClorey, Davis & Acho, Livonia, Mich., L. Anthony Sutin, William J. Bowman, Hogan & Hartson, Washington, D.C., for Hartford Acc. and Nelson R. Goodrich.

Scott L. Gorland, Phyllis Golden Morey, Barbara Colby Tanase, Pepper, Hamilton & Scheetz, Detroit, Mich., Stephen Jacobs, Amy B. Gallent, Siff, Newman, Rosen & Parker, New York City, for First State Ins. and New England Reins. Corp.

James N. Martin, Victor Van Kamp, Martin, Bacon & Martin, Mt. Clemens, Mich., John W. Stamper, O'Melveny & Myers, Los Angeles, Cal., for Pacific Employers Ins. Co.

William Jamieson, Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, Southfield, Mich., for Northbrook Excess and Surplus Ins. Co. ("NESCO").

J.R. Zanetti, Jr., Highland & Currier, P.C., Southfield, Mich., for Transport Indem. Co.

MEMORANDUM OPINION
AND ORDER

FEIKENS, District Judge.

Plaintiff insurers brought this action for declaratory judgment against their insureds ("policyholders"). The policyholders reciprocated, filing a third-party complaint seeking a declaratory judgment against the insurance companies. The parties sought a declaration of their rights and duties under comprehensive general liability and excess liability policies. In particular, they wanted a declaration deciding whether these policies provided indemnification to the policyholders for potential liability in the disposal of hazardous and toxic wastes.

On June 20, 1988, I held one of many hearings in this case. At that hearing, I held the parol evidence rule precluded discovery of evidence of antecedent negotiations about policy language, unless that language is ambiguous. In my December, 1988 Memorandum Opinion, *see Fireman's Fund Insurance Co. v. Ex–Cell–O Corp., et al.,* 702 F.Supp. 1317 (E.D.Mich.1988), I held that the term "sudden" was not ambiguous, but meant "brief, momentary, or lasting only a short time." *Id.* at 1326. Accordingly, I excluded extrinsic evidence regarding policy interpretation. *See Goodwin, Inc. v. Orson E. Coe Pontiac, Inc.,* 392 Mich. 195, 204–211, 220 N.W.2d 664, 668–671 (1974).

I considered three other main issues in this 1988 opinion. First, I found I did not need to reach the question whether damage "expected" by the insured should be determined by reference to an objective or a subjective standard. *Id.* at 1327. Second, I held that the policies' pollution exclusion applied to certain New Hampshire sites. *Id.* at 1328. Third, I held that the policyholders had the burden of proof on the issue of whether the "sudden and accidental" exception to the pollution exclusion applied. *Id.* at 1329. Policyholders now move for reconsideration of this decision.

The policyholders' main objection is that I refused to hear their extrinsic evidence addressing policy interpretation, but relied on similar evidence presented by the insurers. In particular, they criticize my purported reliance on the pollution exclusion's drafting history contained in *The Pollution Exclusion Clause Through the Looking Glass,* 74 Geo.L.J. 1237 (1986) ("the *Looking Glass* note"). The policyholders claim:

This Court did precisely what it said it would not do! This Court considered the drafting history of the pollution exclusion. The Court considered secondary evidence of the drafting "evolution" and accepted as the gospel truth a highly-se-

lective anti-policyholder and pro-insurance industry version of the pollution exclusion.

. . . . .

This Court's reliance upon this secondary evidence [the *Looking Glass* note] constitutes a palpable defect which has misled the Court and the parties.

*Policyholders' Memorandum of Law in Support of Their Motion for Reconsideration of this Court's Opinion and Order Dated Dec. 12, 1988,* filed Dec. 14, 1988, at pp. 1–2.

I deny the policyholders' motion to reconsider, because I did not base my decision, nor was my decision even influenced by, the drafting history in the *Looking Glass* note. I cited this note twice. First, in a footnote explaining the distinction between active and passive polluters, I referred to the note in passing:

12. The distinction between "active" and "passive" polluters originates from *Niagara County,* in which the court held that the pollution exclusion in the county's policy did not preclude the insurer's duty to defend the county against an action regarding hazardous waste disposal at Love Canal, where the county merely owned the land. Interpreting the legislative history behind the statutorily mandated pollution exclusion, the court suggested that it was meant to apply to "industry-related activities." 103 Misc.2d 814, 427 N.Y.S.2d at 174. Subsequent cases have ignored the statutory basis of *Niagara County*'s holding, and extended the concept beyond its more limited holding. *See, e.g., Jackson Township,* [*Municipal Utilities Authority v. Hartford Accident & Indemnity Co.,* 186 N.J.Super. 156] 451 A.2d [990] at 991–922, and [*United Pacific Insurance Company v.*] *Van's Westlake Union* [34 Wash.App. 708], 664 P.2d at [1262] 1264–1266. *See* Note, *The Pollution Exclusion Through the Looking Glass,* 74 Geo.L.J. 1237, 1271–1273 (1986) ("Whatever little analytical value the labels might have had in the *Niagara County* context, they have no value once the facts change.").

*Fireman's Fund, supra,* 702 F.Supp. at 1325, fn. 12.

I rejected the policyholders' active-passive argument because it was not part of the policy, and did not shed light on policy interpretation. *Id.* at 1325. I did not reject the argument due to drafting history contained in the note.

I cited the note a second time in discussing the canon of contract interpretation, that no contract term should be treated as surplusage. *Id.* at 1325–1326. This principle applies with greater force where a contract is carefully drafted. I cited the *Looking Glass* note for the point that the policies at issue were carefully drafted. I did not cite it for the history of that drafting. Even the policyholders agree that the policies were carefully drafted. *Policyholders' Memorandum of Law, supra* at p. 3.

I did not use the note as secondary evidence of the pollution exclusion's drafting history, as the policyholders contend. Therefore, I refuse to reconsider my December 14, 1988 *Fireman's Fund* opinion based on this contention.

In addition to their *Looking Glass* argument, policyholders have informally sent me a letter, enclosing the recent Michigan Supreme Court consolidated opinions in *Allstate Insurance Co. v. Freeman* and *Metropolitan Property & Liability Insurance Co. v. DiCicco,* 432 Mich. 656, 443 N.W.2d 734 (1989). The policyholders argue that because the Michigan Supreme Court referred to the drafting history of the comprehensive general liability policy, I should reverse myself and consider the pollution exclusion's drafting history.

I originally declined to review this drafting history because I found the policy language unambiguous. Therefore, the parol evidence rule prevented me from referring to this material. The Michigan Supreme Court's opinion affirms my decision on this point.

In her concurrence, Justice Boyle did discuss extrinsic evidence, as the policyholders point out. However, she did so after assuming for argument's sake that an ambiguity existed. Justice Boyle prefaced her discussion of extrinsic evidence by stating:

Indeed, I have concluded that the policy clearly and unambiguously requires the insurer to provide a defense on these

facts. Thus, there is no need to resort to extrinsic evidence to ascertain the meaning of the exclusion. *Id.*, § 15:57, pp. 298–302. (Since all prior negotiations are assumed to be merged in the written contract, the policy itself constitutes the contract between the parties, and, if the meaning is clear, it alone must be looked to in construction.) However, *assuming arguendo that an ambiguity exists,* and therefore that extrinsic evidence is admissible, I would nevertheless hold that Metropolitan has a duty to defend under this policy.

*Id.* at 712, 443 N.W.2d 734 (emphasis added).

Justice Boyle reaffirms my holding that unless an insurance policy is ambiguous, extrinsic evidence, such as drafting history, should not be referred to. The policyholders' reliance on *Allstate Insurance Co. v. Freeman, supra,* is misplaced. This case does not require me to consider the pollution exclusion's drafting history, as the policyholders claim. Thus, the policyholders' motion for reconsideration of my December 14, 1988 opinion is DENIED.

IT IS SO ORDERED.