**David F. SCALES, M.D., and Physicians National Risk Retention Group, Inc., a Louisiana corporation, Plaintiffs,**

v.

**MEMORIAL MEDICAL CENTER OF JACKSONVILLE, INC., a Florida corporation, Defendant.**

No. 88–198–Civ–J–12

United States District Court, M.D. Florida, Jacksonville Division.

July 18, 1988.

James C. Truett, Tallahassee, Fla., for plaintiffs.

Michael J. Dewberry, Jacksonville, Fla., for defendant.

ORDER OF DISMISSAL

MELTON, District Judge.

This cause is before the Court on defendant's Motion to Dismiss, filed herein on

March 23, 1988. Plaintiffs responded with a memorandum in opposition to the motion, filed herein on April 6, 1988. For the reasons stated herein the motion will be granted.

Plaintiffs, David F. Scales, M.D. ("Scales"), and Physicians National Risk Retention Group, Inc. ("Physicians National"), initiated this action against defendant, Memorial Medical Center of Jacksonville, Inc. ("Memorial Medical Center"), to obtain declaratory relief pursuant to Fed.R.Civ.P. 57 and 28 U.S.C. § 2201. Because the Court presently considers a motion to dismiss, the allegations of the Complaint are accepted as true and all favorable inferences are granted to plaintiffs. Viewed in this light, this action concerns the restriction of Scales' hospital privileges at Memorial Medical Center because Scales obtains his malpractice insurance from Physicians National. The original reason for Memorial Medical Center's refusal to accept Physicians National's coverage stemmed from an action against Physicians National by the Florida Department of Insurance. The state successfully barred Physicians National from offering malpractice insurance coverage in Florida until the financial stability of the insurer was bolstered by increased premiums and contributions. Memorial Medical Center refused to extend full privileges to doctors covered by Physicians National thereafter because it claimed it lacked financial information regarding the solvency of Physicians National.

The threshold issue raised by the motion to dismiss is subject matter jurisdiction. As the parties acknowledge, the Declaratory Judgment Act does not confer jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 878, 94 L.Ed. 1194 (1950). Plaintiffs predicate federal jurisdiction on the Risk Retention Act ("Act"), codified at 15 U.S.C. § 3901 *et seq.* (1982 & Supp. IV 1986), as amended. Physicians National is a risk retention group as defined and authorized by the Act.[1] Plaintiffs argue that the

Court may find that this action is based on an implied cause of action created by the Act.

The Court faces a question of first impression. No court has found the existence of an implied private cause of action under the Act. To the contrary, one federal district court, in dicta, refused to find a private cause of action in favor of members of a risk retention group who sought to assert direct control over the group's operation. *Fleisher Dev. Corp. v. Home Owners Warranty Corp.*, Case Civ.A. No. 85–1766 (D.D.C.1986) (available on WESTLAW, Allfeds Library, 1986 WL 13540). However, this decision preceded the 1986 amendments to the Act, and it does not address the particular implied private cause of action claimed by plaintiffs. In three other instances, federal district courts entertained challenges to state regulatory actions that allegedly conflicted with the Act. *Insurance Co. of the State of Penn. v. Corcoran*, Case No. 87 Civ. 6118 (JFK) (S.D.N.Y. Sept. 24, 1987) (available on WESTLAW, DCT Library, 1987 WL 17640) (refusing to enjoin action by New York Superintendent of Insurance), *aff'd*, 850 F.2d 88 (2d Cir.1988); *Home Warranty Corp. v. Caldwell*, (N.D.Ga. July 24, 1984) (permanent injunction entered against action by Georgia Insurance Commissioner), *vacated and remanded*, 777 F.2d 1455 (11th Cir.1985); *Home Warranty Corp. v. Elliott*, 585 F.Supp. 443 (D.Del.1984) (preliminary injunction entered against action by Delaware Insurance Commissioner). These cases, however, do not address jurisdictional issues relevant to a suit between private parties. This Court therefore must discern whether the Act, as amended, creates a private cause of action in favor of Scales and Physicians National against Memorial Medical Center.

The framework for determining the existence of an implied private cause of action is stated in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), recently reaffirmed in *Thompson v. Thomp-*

---

1. Risk retention groups are forms of insurance cooperatives through which insureds engage in self-insurance. The Act also covers purchasing groups, which purchase liability insurance on a group basis.

**1004**

son, —— U.S. ——, 108 S.Ct. 513, 518, 98 L.Ed.2d 512 (1988). This framework reaches the focal point for determining whether to infer a private cause of action from a federal statute, that is, Congress' intent. *Id.* "[U]nless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981). The four factor framework from *Cort* poses the following questions:

1. Are plaintiffs members of a class for whose special benefit the statute was created?

2. Is there any indication of legislative intent either to create or deny the remedy sought?

3. Is it consistent with the underlying statutory purposes to imply a remedy such as that sought?

4. Is the cause of action one that is traditionally relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law?

*See* 422 U.S. at 78, 95 S.Ct. at 2088. The Court will consider these questions seriatim.

■ The sum and substance of the Act is to exempt risk retention groups from certain state regulation and clarify state authority in other areas related to risk retention groups. Policyholders are not mentioned in the text of the Act. The first *Cort* factor "is answered by looking to the language of the statute itself." *Cannon v. University of Chicago,* 441 U.S. 677, 689, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). The specific mention of risk retention groups raises the inference that Physicians National falls within the specific class protected by the Act, *see id.* at 689–93, 99 S.Ct. at 1953–55, and the absence of any mention of policyholders conversely places Scales outside the class of those specially benefited by the Act. It might be argued that risk retention groups are a means to confer special benefit on the class of per-

sons comprised of policyholders. However, the statutory scheme plainly contemplates that risk retention groups would vindicate any rights of policyholders, thereby excluding policyholders from the class of persons who might imply a private cause of action under the Act. *See Daily Income Fund v. Fox,* 464 U.S. 523, 541–42, 104 S.Ct. 831, 841–42, 78 L.Ed.2d 645 (1984). As a consequence, Scales lacks a jurisdictional basis in this case and the Court will proceed further only to determine whether Physicians National may claim an implied private cause of action under the Act.

■ Turning to the second *Cort* factor, it bears noting that the Act's contemporary legal context includes the strict approach to implied private remedies which *Cort* ushered in. This fact distinguishes the instant case from *Cannon* and from *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), because those cases both involved statutes enacted prior to 1975, the year in which *Cort* was decided. The members of Congress are presumed to know the law, *Cannon,* 441 U.S. at 696–97, 99 S.Ct. at 1957–58, so it is fair to require greater clarity in congressional intent to create a private remedy for statutes enacted since *Cort. Cf. Merrell Dow Pharmaceuticals v. Thompson,* 478 U.S. 804, 811, 106 S.Ct. 3229, 3234, 92 L.Ed.2d 650 (1986) (noting the "significant change in our approach to congressional silence on the provision of federal remedies" which *Cort* produced). Of course, the Court does not presume to limit the analysis "to correcting drafting errors when Congress simply forgot to codify its evident intention to provide a cause of action." *Thompson,* 108 S.Ct. at 516. Rather, the Court employs a strong presumption against the creation of implied causes of actions in post-*Cort* enactments. *Cf. Smith v. Reagan,* 844 F.2d 195, 201 (4th Cir.1988) (applying similar analysis to 19th Century statute because period in which it was enacted preceded implied private remedy doctrine); *In re Olympia Brewing Co. Sec. Litig.,* 674 F.Supp. 597, 609–610 (N.D.Ill.1987) (implied

private remedies are disfavored under *Cort* analysis).

The Act's legislative history is silent on the issue of private remedies. In this regard, however, the complexity of the Act's history bears note. As enacted in 1981 and amended in 1983, the Act applied to risk retention groups and purchasing groups providing product liability insurance. Coverage of the kind provided by Physicians National did not fall within the Act until the 1986 amendments.[2] Therefore, the Act's history must be reviewed sequentially. Using this perspective it appears that Congress did not intend to create a private cause of action under the Act.

As enacted in 1981, the Act directed federal attention to

> the obtainability and affordability of product liability insurance by manufacturers, wholesalers, and retailers of products causing damage to persons or property. The Act was designed to preempt state regulation which would interfere with the establishment of the new concept of a risk retention group, which was, in turn, aimed at ridding the marketplace of subjective insurance ratemaking policies.

*Home Warranty Corp. v. Caldwell*, 777 F.2d 1455, 1472–73 (11th Cir.1985), *cert. denied*, 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 118 (1986). "Because purchasing groups and risk retention groups were illegal under many state laws, the 1981 Act explicitly addressed the relative role of state and federal regulation. Congress considered and then rejected the creation of a comprehensive federal regulatory scheme for purchasing and risk retention groups." *Insurance Co. of the State of Penn. v. Corcoran*, 850 F.2d 88, 91 (2d Cir.1988). The 1983 amendment to the Act "was designed solely to make clear that the scope of preemption under the Act was limited to that necessary to effectuate the interstate formation of risk retention groups...." *Home Warranty Corp.*, 777 F.2d at 1477. In essence, Congress sought to harmonize,

through preemption, a multiplicity of state laws which affected the operation of risk retention groups. The 1986 amendments expand the scope of preemption with respect to the types of liability insurance that risk retention groups could provide, but the amendments also retreated from some areas of state regulation which had been preempted by the Act previously. *See* H.Rpt. No. 865, 99th Cong., 2d Sess. 7 (1986), *reprinted in* 1986 U.S. Code Cong. & Admin.News 5303, 5304. The legislative intent of the Act is aptly summarized as a scheme to permit the growth of otherwise restricted risk retention groups: "Congress created an interstate capacity for groups to self-insure against risks." *Home Warranty Corp.*, 777 F.2d at 1478. So described, the legislative history of the Act suggests that Congress did not intend to create an implied private cause of action.

Additionally, the House Energy and Commerce Committee, the body which reported out the bill containing the 1986 amendments, held a view of the Act which is inconsistent with an implied private remedy. The report concludes:

> The Committee proceeds on the assumption that state regulatory officials act in good faith. Nevertheless, the Committee must be alert to indications that implementation in all states or some states is thwarting the legitimate operation of risk retention groups and purchasing groups. At the same time, the Committee must be alert to indications that the discretion of regulators has been so restricted that practices injurious to the public cannot be adequately addressed by regulators acting in good faith. Finally, the Committee must continuously reevaluate whether an appropriate balance has been struck.... The Committee is reporting this bill that it creates a workable legal framework. [sic]

H.Rpt. No. 865, at 21, 1986 U.S. Code Cong. & Admin.News at 5318. The Court reads this congressional concern with a

---

**2.** The original law, Pub.L. 97–45, was titled "Product Liability Risk Retention Act of 1981." The 1986 amendments changed the title of the

chapter in the U.S. Code to reflect the broader coverage of the Act.

particular balance in the legal framework as a caution against implying into the Act any more remedies than appear on its face. The Court's interpretation is consistent with the recent decision of the Second Circuit which placed a very narrow construction on the Act's preemption provisions. The court of appeals read the legislative history, in particular the history of the 1986 amendments, and commented:

Our conclusion is thus supported by carefully drafted statutory language and a legislative history demonstrating virtually beyond cavil that Congress meant what it said. [Appellant] may be correct that the [Act]'s preemption provisions are so narrow that Congress's general goal of increasing the availability of liability insurance to purchasing groups will be only partly achieved. Congress, however, selected particularized means to that end in conscious recognition that a considerable area of state regulation would remain intact. *We have no power to second-guess Congress's decision that the benefits of an arguably more efficient market for insurance are outweighed by the potential costs in diminished state authority.*

*State of Penn.*, 850 F.2d at 93 (2d Cir.1988) (emphasis added).

Further, the jurisdictional questions which Congress addressed provide an implication against a private cause of action. The Act expressly authorizes federal jurisdiction for an injunction against risk retention groups which are financially unsound. 15 U.S.C. § 3906 (Supp. IV 1986). No similar expression of jurisdiction is provided on behalf of risk retention groups. Congressional expression in the one instance and silence in the other suggest an intention not to create a private cause of action in favor of risk retention groups.[3]

Finally, Congress appeared unconcerned with the particular harm alleged in this case. "[A]part from a State's continued ability requirements relating to financial responsibility, a State or local government

or their subsidiaries are free to choose from whom they will purchase a service and under what conditions. This freedom is not affected by subsection 6(d) of the Act [15 U.S.C. § 3905(d) ]." H.Rpt. No. 865, at 20, 1986 U.S. Code Cong. & Admin.News at 5317. Plaintiffs do not allege state action; however, the Court perceives that the freedom to choose service providers is at least as great for a private party such as Memorial Medical Center.

Moving to the third *Cort* factor, consistency or conflict with the underlying statutory purposes, the Court observes that a federal statutory regime which simply preempts state regulations is concerned with the allocation of power between governments and does not raise an inference that rights have been created in favor of any identifiable group. *Cf. Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 615, 99 S.Ct. 1905, 1915, 60 L.Ed.2d 508 (1979) ("[A]n allegation of incompatibility between federal and state statutes and regulations does not, in itself, give rise to a claim 'secured by the Constitution' within the meaning of [28 U.S.C.] § 1343(3)."); *White Mountain Apache Tribe v. Williams*, 798 F.2d 1205, 1209 (9th Cir. 1986) (supremacy clause allocates authority between national and state governments, thus "it is not a rights conferring provision that protects the individual against government intrusion."), *cert. denied*, 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987); *Consolidated Freightways Corp. v. Kassel*, 730 F.2d 1139, 1144 (8th Cir.) (same conclusion concerning dormant commerce clause), *cert. denied*, 469 U.S. 834, 105 S.Ct. 126, 83 L.Ed.2d 68 (1984). Preemption statutes generally do not give rise to an implied cause of action. *See Montauk–Caribbean Airways, Inc. v. Hope*, 784 F.2d 91, 97–98 (2d Cir.) (preemption statute in Federal Aviation Act), *cert. denied*, 479 U.S. 872, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986); *accord Air Transp. Ass'n v. Public Util. Comm'n*, 833 F.2d 200, 207 (9th Cir. 1987); *New York Airlines, Inc. v. Dukes*

---

**3.** To the extent that the cases involving the Act and state regulatory action might have bearing on the jurisdictional issues, the 1986 amend- ment which added § 3906 certainly distinguishes the instant case.

*County,* 623 F.Supp. 1435, 1448–50 (D.Mass.1985). The legislative history of the Act suggests that Congress perceived that it was shaping a set of rules to allocate regulatory authority and thereby simplify the regulation of risk retention groups. Because Congress was chiefly concerned with rationalizing the patchwork of impediments to interstate extension of risk retention groups, the Act should most naturally be construed similar to a rule of decision for courts to use in adjudicating an enforcement action by a state agency.[4] So construed, it is not compatible with the purpose and context of the legislative scheme to infer a private cause of action. *See Thompson,* 108 S.Ct. at 518.

The fourth *Cort* factor, the place of state law in this area, will be mentioned in an abundance of caution, but it is not determinative given the preceding conclusions regarding legislative intent and purpose. *See Transamerica Mortgage Advisors v. Lewis,* 444 U.S. 11, 23, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979). The character of the dispute asserted in the Complaint is one usually governed by state law. Scales asserts that his privileges are limited by a hospital by-law and this by-law violates the Act. Accepting for the purpose of argument that this second contention is true, Scales' claim appears to be a state law claim for breach of contract or tortious interference with prospective business relationships. The federal law issue may be an ingredient of the overall action, but that fact does not transform the state law claim into an implied federal cause of action under the Act. The Court cannot identify what cause of action Physicians National might pursue.[5]

Having found that the four *Cort* factors are not satisified, the Court concludes that no cause of action can be implied from the Act. Plaintiffs argue, however, that the *Cort* approach does not account for a multitude of decisions on the subject of implied causes of action, in particular *J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). It suffices to say that the *Borak* approach has been expressly abandoned, *Touche Ross & Co. v. Redington,* 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979), and *Cort* sets forth the point of departure, *see Curran,* 456 U.S. at 377, 102 S.Ct. at 1838, 72 L.Ed.2d 182. Plaintiffs' concern that "there would be precious little federal litigation" under modern implied remedy doctrine ironically states one reason for the doctrine's development. *See Merrell Dow Pharmaceuticals,* 478 U.S. at 811, 106 S.Ct. at 3234. This Court lacks jurisdiction over the subject matter of this case.

Although "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced", *id.* at 809 n. 6, 106 S.Ct. at 3233 n. 6, plaintiffs' memorandum appears to raise a theory based on "arising under"

---

**4.** This interpretation adequately explains *Home Warranty Corp. v. Caldwell,* 777 F.2d 1455 (11th Cir.1985), because the parties in that action could rely on diversity jurisdiction. In *Insurance Co. of the State of Pennsylvania v. Corcoran,* Case No. 87 Civ. 6118 (JFK) (S.D.N.Y. Sept. 24, 1987), and *Home Warranty Corp. v. Elliott,* 585 F.Supp. 443 (D.Del.1983), however, the parties were not diverse. Unfortunately, neither court explains the jurisdictional basis for the respective actions. In *State of Penn.,* the court states that federal question jurisdiction is involved without further comment. Arguably, the Act could be interpreted to provide jurisdiction against state enforcement actions but not in favor of private suits. This hobbled interpretation is unsatisfactory. The legislative history and structure of the Act do not provide any basis to imply a private cause of action in either instance.

An additional arguable basis for jurisdiction when state action is involved, 42 U.S.C. § 1983, also must be rejected. In this Circuit, federal courts lack jurisdiction to hear § 1983 claims based on a violation of the supremacy clause predicated on the preemption of state law by a federal statute. *See Pirolo v. City of Clearwater,* 711 F.2d 1006, 1010–11 (11th Cir.), *reh'g denied,* 720 F.2d 688, (11th Cir.1983). The Court therefore must respectfully disagree with the courts in *State of Penn.* and *Elliott* to the extent that either case can be read to suggest a jurisdictional basis for an implied private cause of action under the Act.

**5.** Indeed, no allegation of injury on Physicians National part is alleged in the Complaint. Its standing in this and any other lawsuit, barring further allegations of direct harm to it, is highly questionable. *See State of Penn.,* Case No. 87 Civ. 6118 (JFK) (S.D.N.Y. Sept. 24, 1987) (insurer lacks standing to assert harm to persons who would be market for its insurance under Act), *aff'd,* 850 F.2d 88 (2d Cir.1988).

**1008**

jurisdiction other than an implied remedy. To the extent that plaintiffs argue that the presence of federal issues in the underlying action should confer federal jurisdiction, "the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Id.* at 814, 106 S.Ct. at 3236 (footnote omitted). Accordingly, it is

ORDERED AND ADJUDGED:

1. That defendant's Motion to Dismiss is hereby granted; and

2. That this case is hereby dismissed for want of subject matter jurisdiction.