HUDSON INSURANCE COMPANY,
etc., Plaintiff,

v.

AMERICAN ELECTRIC
CORPORATION, etc.,
et al., Defendants.

No. 89–869–Civ–J–12.

United States District Court,
M.D. Florida,
Jacksonville Division.

Oct. 12, 1990.

Jonathan L. Alpert, Robert A. Levine, Alpert, Josey & Grilli, Tampa, Fla., for plaintiff.

Jeffery Allen Tew, Kirkpatrick & Lockhart, Miami, Fla. (King & Spalding, Charles H. Tisdale, Jr., Atlanta, Ga., Vail T. Thorne, Washington, D.C., of counsel), for defendant Green River Steel Corp.

Joseph M. Glickstein, Jr., Neptune Beach, Fla., for defendant Don L. Tullis and Associates, Inc.

No appearances on behalf of the other defendants.

## ORDER DISMISSING CASE

MELTON, District Judge.

This cause is before the Court on several motions. Plaintiff submitted a Motion for Summary Judgment, filed herein on April 11, 1990. Defendant Don L. Tullis and Associates, Inc. subsequently moved, on April 23, 1990, to adopt that motion. Defendant Green River Steel Corporation responded with a memorandum in opposition to the motion and a Motion for Judgment on the Pleadings, both filed herein on May 15, 1990. Plaintiff responded with a memorandum in opposition to that motion, filed herein on June 1, 1990. By leave of the Court, reply memoranda also have been filed.

A central issue raised in opposition to the summary judgment motion, and the basis for the motion for judgment on the pleadings, is this Court's jurisdiction. The Court is obligated to resolve this issue as a threshold matter. *See Insurance Company of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). "[I]f a party raises an issue of subject matter jurisdiction on his motion for a judgment on the pleadings, the court will treat the motion as if it had been brought under Rule 12(b)(1)." 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367, at 516 (2d ed. 1990). Because the Court concludes that jurisdiction is lacking, this case will be dismissed.

Plaintiff Hudson Insurance Company ("Hudson") filed suit, alleging jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, to obtain a declaration that it is not liable to defendants, in particular defendant Green River Steel Corporation ("Green River"), for response and recovery costs incurred by the Environmental Protection Agency ("EPA") for the clean-up of polychlorinated biphenyl ("PCB") contaminated transformers. Green River contracted with defendant American Electric Corporation ("AEC") for handling and disposal of PCB transformers. AEC's handling and disposal practices at a facility situated at 523 Ellis Road, Jacksonville, Florida, eventuated the EPA's response activities.

Hudson provided insurance to AEC. When EPA informed Green River that it might be liable to pay for the expenses incurred in the PCB disposal and site clean-up, Green River in turn informed Hudson that if liable it would seek payment from Hudson on AEC's insurance policy. Hudson subsequently filed this action. In the

complaint, Hudson prays for the Court's declaration on two issues. First, Hudson seeks a declaration that it is not a "potentially liable party" under CERCLA. Second, Hudson asks for a declaration that the insurance policy upon which Green River made its demand does not provide coverage for the CERCLA response and recovery costs.

Green River affirmatively asserted in its answer that the Court lacked subject matter jurisdiction. Moreover, at the preliminary pretrial conference defendants' attorneys stated there is no dispute over the "potentially liable party" issue because no defendant has ever contended that Hudson fits the statutory definition of a potentially liable party. In its Memorandum of Law in Support of Motion for Summary Judgment, at 4 n. 7, Hudson concedes, "[n]either EPA nor any Defendant has made claim for reimbursement or contribution from HUDSON as a [potentially liable party]."

■ The Court will not consider the "potentially liable party" issue on the matter of jurisdiction. Hudson's concession must be read as an admission that no justiciable controversy existed concerning that issue. Cf. Wendy's Int'l Inc. v. City of Birmingham, 868 F.2d 433, 436 (11th Cir.1989). Subject matter jurisdiction in this case is measured exclusively by the presence or absence of a federal question in the insurance coverage issue.

■ The first step in evaluating jurisdiction in this declaratory judgment action is to untangle the procedural posture of the case. See Provident Life & Acc. Ins. Co. v. Transamerica–Occidental Life Ins. Co., 850 F.2d 1489, 1491 (11th Cir.1988), cert. denied, 489 U.S. 1081, 109 S.Ct. 1534, 103 L.Ed.2d 839 (1989). The declaratory judgment device allows Hudson to anticipate an action or actions against it and preemptively strike by obtaining a ruling on dispositive legal issues. The Declaratory Judgment Act, however, does not confer jurisdiction on this action. See, e.g., Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S.Ct. 876, 878, 94 L.Ed. 1194 (1950). Rather, the Court must reconstruct the underlying action and evaluate the jurisdiction issue in that instance.

■ The reconstructed action must respect the well-pleaded complaint rule. Under this rule, as applied in the process of reconstruction, the Court determines whether a claim "arises under" federal law from what necessarily would appear in the statement of claim that would be set forth in the anticipated action; a defense to the anticipated action that raises a federal question is insufficient to confer federal jurisdiction. See Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952) ("If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for declaratory judgment establishing a defense to that claim."); see also Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 16, 19 n. 19, 103 S.Ct. 2841, 2849, 2851 n. 19, 77 L.Ed.2d 420 (1983) (jurisdiction lacking when federal question is element of defense only). An independent corollary to the well-pleaded complaint rule, the "complete preemption" doctrine, appears to be at issue here. This doctrine holds that some statutes have a preemptive force so extraordinary that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar Inc. v. Williams, 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987).

■ Hudson's concern in filing this suit was the potential liability for payment under AEC's insurance policy that Green River might assert. Indeed, Green River counterclaimed in this action, contingent on a finding of subject matter jurisdiction for Hudson's action, for declaratory relief in

its favor on the matter of insurance coverage and for attorney fees and costs pursuant to Fla.Stat. § 627.428. Simply put, the underlying action is a suit for the proceeds of an insurance policy. That kind of action is usually a matter of state law, not a federal question.

Hudson is not without theories that suggest the existence of federal question jurisdiction. Two principle arguments emerge in Hudson's response to the motion for judgment on the pleadings. One, federal law must be consulted to determine whether an insurance policy falls within the savings clause portion of 42 U.S.C. § 9607(e)(1). Therefore, a federal question is presented in the form of the interpretation of CERCLA, construction of its provisions and their application to insurance policies. Within this argument Hudson proposes that CERCLA completely preempts state law on the issue of liability under an insurance policy. Two, Hudson relies upon the grant of original exclusive jurisdiction to the district court for all controversies "arising under" CERCLA. While Hudson does not fully draw the contours of this argument, the Court infers an allusion to the "complete preemption" doctrine stemming from the preemption arguments Hudson presses in the first theory.

Hudson concedes that its theories are novel. In its review of the case law, Hudson notes,

> In the nearly ten years since the adoption of CERCLA, both state and federal courts have been asked to apply state common law principles to construe insurance policies, such as [commercial umbrella liability] policies, in regard to CERCLA coverage. However, the fundamental analysis has been overlooked: was the policy an *agreement to insure CERCLA liability under federal law?*

Memorandum of Law in Support of Motion for Summary Judgment, at 8. The federal cases bear out Hudson's observation, as they uniformly predicate jurisdiction on the diversity of the parties' citizenship and apply state law.[1] Moreover, a legion of state court decisions stand in contradiction to Hudson's theory of exclusive federal jurisdiction.[2] Finally, informed commentary on

**1.** See *FL Aerospace v. Aetna Cas. & Sur. Co.,* 897 F.2d 214, 217 (6th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 283, 112 L.Ed.2d 238; *Claussen v. Aetna Cas. & Sur. Co.,* 865 F.2d 1217, 1219, *further proceedings,* 888 F.2d 747 (11th Cir.1989); *Avondale Indus., Inc. v. Travelers Indemnity Co.,* 887 F.2d 1200, 1202 (2d Cir.1989), *reh'g denied,* 894 F.2d 498 (2d Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990); *City of Johnstown v. Bankers Standard Ins. Co.,* 877 F.2d 1146, 1147 (2d Cir.1989); *Maryland Cas. Co. v. Armco,* 822 F.2d 1348 (4th Cir.1987) (*aff'g* 643 F.Supp. 430, 431 (D.Md. 1986)), *cert. denied,* 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988); *Mraz v. Canadian Universal Ins. Co.,* 804 F.2d 1325, 1326–27 (4th Cir. 1986); *A. Johnson & Co. v. Aetna Cas. & Sur. Co.,* 741 F.Supp. 298, 299 (D.Mass.1990); *Industrial Indemn. Ins. Co. v. Crown Auto Dealerships, Inc.,* 731 F.Supp. 1517 (M.D.Fla.1990) (pretrial stipulation filed Feb. 28, 1990, relies on diversity as jurisdictional basis), *appeal filed,* Dkt. No. 90–3359 (11th Cir. Apr. 17, 1990); *Federal Ins. Co. v. Susquehanna Broadcasting Co.,* 727 F.Supp. 169, 170 (M.D.Pa.1989), *reconsidered in part,* 738 F.Supp. 896 (M.D.Pa.1990); *U.S. Fidelity & Guaranty Co. v. Thomas Solvent Co.,* 683 F.Supp. 1139, 1164 (W.D.Mich.1988); *Fireman's Fund Ins. Cos. v. Ex–Cell–O Corp.,* 685 F.Supp. 621, 623 (E.D.Mich.1987), *further proceedings,* 702 F.Supp. 1317 (E.D.Mich.1988), *reconsideration denied,* 720 F.Supp. 597 (E.D.Mich.1989); *Detrex Chem. Indus., Inc. v. Employers Ins. of*

*Wausau,* 681 F.Supp. 438, 455 (N.D.Ohio 1987), *reconsideration denied,* 746 F.Supp. 1310 (N.D. Ohio 1990); *Pepper's Steel & Alloys, Inc. v. U.S. Fidelity & Guaranty Co.,* 668 F.Supp. 1541, 1544 (S.D.Fla.1987); *National Grange Mutual Insurance Co. v. Continental Cas. Ins. Co.,* 650 F.Supp. 1404, 1407 (S.D.N.Y.1986); *but see Cincinnati Ins. Co. v. Milliken & Co.,* 857 F.2d 979 (4th Cir.1988) (jurisdictional basis not stated, but U.S. government named as defendant); *Continental Ins. Cos. v. Northeastern Pharm. & Chem. Co., Inc.,* 842 F.2d 977 (8th Cir.) (jurisdictional basis not apparent from en banc or panel opinion, but state law applied), *cert. denied,* 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988); *EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.,* 701 F.Supp. 399, 400 (W.D.N.Y.1988) (jurisdictional basis not stated, but state law applied), *aff'd,* 905 F.2d 8 (2d Cir.1990); *State of New York v. AMRO Realty Corp.,* 697 F.Supp. 99, 107 (N.D.N.Y.1988) (third-party action against insurers rested on diversity jurisdiction), *reconsideration denied,* 745 F.Supp. 832 (N.D.N.Y.1990).

**2.** See, e.g., *AIU Ins. Co. v. Superior Court,* 213 Cal.App.3d 1219, 262 Cal.Rptr. 182, *rev. granted,* 264 Cal.Rptr. 354, 782 P.2d 595 (1989); *Aerojet–General Corp. v. San Mateo County Superior Court,* 209 Cal.App.3d 973, 257 Cal.Rptr. 621, *reh'g denied & rev. denied,* 211 Cal.App.3d 216, 258 Cal.Rptr. 684 (1989); *Monsanto Co. v. Aetna Cas. & Sur. Co.,* 559 A.2d 1301 (Del.Super.1988);

comprehensive general liability policies, and the pollution exclusion in particular, has worked entirely within the framework of state law, as it applies to insurance policies covering CERCLA liabilities.[3]

On the few occasions when the choice between federal and state law has been raised in related contexts, the state law concerning insurance has prevailed.[4] *See, e.g., Intel Corp. v. Hartford Acc. & Indemn. Co.,* 692 F.Supp. 1171, 1186-87 (N.D.Cal.1988). As one commentator explains,

> CERCLA does define certain cognizable harms for which the responsible party may become liable. But CERCLA never purports to define the relationship between an insurer and the insured for the purposes of allocating the costs of this liability.... [O]nce the scope of liability is defined by CERCLA, the scope of the insured's coverage for this liability should be determined under state law.

*Claussen v. Aetna Cas. & Sur. Co.,* 259 Ga. 333, 380 S.E.2d 686 (1989); *U.S. Fidelity & Guaranty Co. v. Specialty Coatings Co.,* 180 Ill.App.3d 378, 129 Ill.Dec. 306, 535 N.E.2d 1071, *appeal denied,* 127 Ill.2d 643, 136 Ill.Dec. 609, 545 N.E.2d 133 (1989); *International Minerals & Chem. Co. v. Liberty Mutual Ins. Co.,* 168 Ill.App.3d 361, 119 Ill.Dec. 96, 522 N.E.2d 758, *appeal denied,* 122 Ill.2d 576, 125 Ill.Dec. 218, 530 N.E.2d 246 (1988); *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.,* No. 88-CA-2405-MR (Ky.App. Mar. 9, 1990), *rev. granted,* No. 90-SC-242-DG (Ky. Sept. 19, 1990); *Hazen Paper Co. v. U.S. Fidelity & Guaranty Co.,* 407 Mass. 689, 555 N.E.2d 576 (1990); *Minnesota Mining & Mfg. Co. v. Travelers Indem. Co.,* 457 N.W.2d 175 (Minn.1990); *Technicon Elec. Corp. v. American Home Assurance Co.,* 74 N.Y.2d 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989); *Boeing Co. v. Aetna Cas. & Sur. Co.,* 113 Wash.2d 869, 784 P.2d 507 (1990); *Liberty Mutual Ins. Co. v. Triangle Indus., Inc.,* 390 S.E.2d 562 (W.Va. 1990); *Just v. Land Reclamation, Ltd.,* 155 Wis.2d 737, 456 N.W.2d 570 (1990); *see also* Note, *Forum Non Conveniens and Comprehensive Hazardous Waste Coverage Suits,* 90 COLUM. L.REV 1066, 1071 (1990) (typically comprehensive declaratory judgment actions by CERCLA-liable parties against insurers are brought in state court).

3. *See, e.g.,* Abraham, *Environmental Liability and the Limits of Insurance,* 88 COLUM.L.REV. 942, 961-66 (1988); Ballard & Manus, *Clearing Muddy Waters: Anatomy of the Comprehensive General Liability Pollution Exclusion,* 75 CORNELL L.REV 610 (1990); *The CGL Policy and the Pollu-*

Comment, *Insurance Coverage of CERCLA Response Costs: The Limits of "Damages" in Comprehensive General Liability Policies,* 16 ECOLOGY L.Q. 755, 779 (1989).

The Court approaches Hudson's novel theories with some caution. It would be imprudent to ignore the Eleventh Circuit's treatment of a CERCLA insurance issue in *Claussen* as a matter of state law best resolved by certification of a question to the Georgia Supreme Court. While Hudson is correct in the strictest sense that the Eleventh Circuit did not explicitly consider the option of federal common law, this Court does not lightly infer that this option was simply "overlooked" by the Court of Appeals. Consequently, the Court demands a strong showing on Hudson's part to overcome the overwhelming weight of authority that stands in contradiction to the arguments underlying the assertion of exclusive federal jurisdiction.

*tion Exclusion Clause: Using the Drafting History to Raise the Interpretation Out of the Quagmire,* 23 COLUM.J.L. & SOC.PROB. 233 (1990); Note, *The Pollution Exclusion Clause Through the Looking Glass,* 74 GEO.L.J. 1237 (1986); *Developments in the Law—Toxic Waste Litigation,* 99 HARV.L.REV. 1458, 1573-85 (1986); Note, *The Pollution Exclusion in the Comprehensive General Liability Insurance Policy,* 1986 U.ILL.L.REV 897.

4. The matter has arisen in the context of defining whether CERCLA response costs constitute "damages" under an otherwise applicable insurance policy. Two cases decided by the Fourth Circuit Court of Appeals apparently consult federal law to determine the legal or equitable nature of CERCLA response costs. *See Armco,* 822 F.2d at 1352-54; *Mraz,* 804 F.2d at 1328-29. Cases from other jurisdictions expressly choose to rest solely on the interpretation of state law. *See, e.g., Northeastern Pharmaceutical,* 842 F.2d at 985-86 (*en banc* opinion); *Intel Corp.,* 692 F.Supp. at 1186-88; *United States Aviex Co. v. Travelers Ins. Co.,* 125 Mich.App. 579, 336 N.W.2d 838, 842-43 (1983). The interjection of federal law into this matter by the first line of cases, however, arises only as an element of a defense to a traditional state law claim. Federal law is employed solely to describe the nature of the insurance claim asserted; state law determines whether the insurance claim, so described, is covered by the policy. This role for federal law, if it ultimately prevails over the second line of cases, still is consistent with the ruling herein, as the use of federal law as an element of a defense is insufficient to confer subject matter jurisdiction.

■ The notion that § 9607(e)(1) creates federal jurisdiction on its own can be dismissed without much ado. The relevant portion of the statute states: "Nothing in the subsection shall bar any agreement to insure … a party to such agreement for any liability under this section." If Hudson is correct in asserting that a court must decide as a matter of federal law whether an insurance policy is one to insure CERCLA liability,[5] this issue alone does not create jurisdiction. The determination of the nature of the insurance policy fits within the framework of a state law cause of action. "Given the significance of the assumed congressional determination to preclude federal private remedies, the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system." *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 814, 106 S.Ct. 3229, 3235, 92 L.Ed.2d 650 (1986). Further, § 9607(e)(1) cannot be seen as a source of a federal cause of action because "[a] law

---

**5.** Hudson is not correct in this assertion. The second sentence of subsection 9607(e)(1), quoted above, is paired with a sentence that bans agreements that purport to transfer liability from a statutorily liable party to some other party. The tension between the first and second sentence has been widely noted. It is resolved by "giv[ing] effect to contracts binding parties otherwise not liable, to indemnify or insure liable parties." *AM Int'l, Inc. v. International Forging Equip.*, 743 F.Supp. 525, 530 (N.D.Ohio 1990).

> That is, a liable party remains liable (e.g., to the United States) regardless of whether it has an indemnity agreement, but the liable party still may proceed against a third party (e.g., an insurance company) which has agreed to indemnify the liable party. This interpretation is consistent with the language of the statute, the cases applying it, and the legislative history.

*Central Ill. Pub. Serv. Co. v. Industrial Oil Tank & Line Cleaning Serv.*, 730 F.Supp. 1498, 1507 (W.D.Mo.1990); *see also Southland Corp. v. Ashland Oil, Inc.*, 696 F.Supp. 994, 1000 (D.N.J. 1988) ("CERCLA … does not abrogate [private] parties' contractual [indemnity] rights."), *reconsidered in part*, 1988 WL 125855 (D.N.J. Nov. 23, 1988).

In this light, Hudson's call for a uniform federal common law for insurance covering CERCLA liabilities rests on an exaggeration of the stakes involved. Arranging for payment from an otherwise-not-responsible third party is "essentially tangential to the enforcement of CERCLA's liability provisions." *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1459 (9th Cir.1986). It concerns primarily private parties, not the United States or a unique federal interest such as military procurement. *See Boyle v. United Tech. Corp.*, 487 U.S. 500, 506–08, 108 S.Ct. 2510, 2514–16, 101 L.Ed.2d 442 (1988). Nothing in CERCLA gives the explicit suggestion necessary to infer that Congress intended to rely on a body of federal common law to interpret insurance policies. *Cf. National Audubon Soc. v. Department of Water*, 869 F.2d 1196, 1201–03 (9th Cir.1988) (reaching like conclusion regarding Clean Air Act).

While Hudson makes much of the congressional intent to make polluters pay, this emphasis is misplaced. One problem in the reasoning lies its source, S. 1480, a Senate bill that precursed CERCLA. The relevant section underwent change from the committee version. *See AM Int'l*, 743 F.Supp. at 528–29. The material changes render useless the earlier legislative history cited by Hudson. *See In re Burns*, 887 F.2d 1541, 1546 (11th Cir.1989).

More importantly, the "polluters pay" goal is not jeopardized by an autonomous body of state law on insurance. "[C]ompelling insurance companies to pay will eventually impose the full cost on the insured, by means of carefully calculated and frequently revised premiums, which will in turn encourage the insured to operate at an efficient level of accident prevention." *Developments in the Law—Toxic Waste Litigation, supra*, at 1578 (footnote omitted).

> In the effort to impose on waste-handling firms the full costs of the risks they generate, a regime of full insurance with premiums tailored tightly to risks is preferable to a regime of no insurance with firms bearing all liabilities. The insurance industry is expert in collecting and evaluating risk data, identifying methods of risk reduction, and charging premiums that reflect broad risk experience. Individual firms lack such expertise, and society would pay large transaction costs if each firm had to determine the proper price of every risk it incurred. In addition, large insurance pools provide for the compensation of tort victims and the funding of cleanup agencies, whereas individual firms are often overwhelmed by their waste-related liabilities….

*Id.* at n. 40 (citations omitted). The primacy of the remedial aspect of CERCLA, *see United States v. Fleet Factors, Inc.*, 901 F.2d 1550, 1557–58 (11th Cir.1990), *petition for cert. filed*, No. 90–504 (Sept. 21, 1990), confirms the importance of giving effect to otherwise valid insurance policies. The creation of a federal rule to govern insurance policies would introduce confusion and uncertainty into commercial relations long committed to state law. *Cf. Mardan*, 804 F.2d at 1460 (rejecting suggestion to create federal rule to govern CERCLA releases).

that does not 'affect' the ability of a [party] to sue hardly creates a cause of action." *Dillon v. Combs,* 895 F.2d 1175, 1177 (7th Cir.1990), *petition for cert. filed,* 59 U.S. L.W. 3054 (U.S. July 2, 1990) (No. 90–25). In the absence of a federal remedy directed to the matter of insurance coverage, "the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Merrell Dow,* 478 U.S. at 814, 106 S.Ct. at 3235.

■ Given that jurisdiction is not directly conferred by a cause of action concerning insurance, Hudson's "complete preemption" argument must be evaluated. This argument underlies both theories upon which jurisdiction is asserted, so its success or failure determines the Court's ability to hear this case. Because the Court finds that the reconstructed suit for which declaratory judgment is sought does not fall within an area of complete preemption, the Court concludes that jurisdiction is lacking. *Accord Boone v. DuBose,* 718 F.Supp. 479, 485–86 (M.D.La.1988) (examining structure of CERCLA to conclude that Congress did not intend complete preemption that would give rise to "arising under" jurisdiction).

■ The McCarran–Ferguson Act serves as a starting point. Pursuant to 15 U.S.C. § 1012(b), state regulation of the business of insurance, which includes the determination of the substantive meaning of insurance policies, is protected from the effect of federal legislation enacted under the commerce clause unless the federal statute is expressly applied to the insurance business. *See Cochran v. Paco, Inc.,* 606 F.2d 460, 463 (5th Cir.1979). It "precludes the application of federal laws if, as a result, laws of a state regulating insurance would be invalidated, impaired, or superseded." *Miller v. National Fidelity Life Ins. Co.,* 588 F.2d 185, 186–87 (5th Cir.1979). In a nutshell, the McCarran–Ferguson Act creates a strong presumption against a finding of federal preemption of insurance regulation. *See* Comment, *supra,* 16 Ecology L.Q. at 778.

■ This recognition of the McCarran–Ferguson Act should be coupled with a recognition that CERCLA is a broad, wide-ranging regulatory and remedial regime. Questions of liability under CERCLA are federal questions, resolved by reference to federal common law. For instance, the doctrine of corporate successor or parent liability for CERCLA response costs is one of federal common law. *See, e.g., Louisiana–Pacific Corp. v. Asarco, Inc.,* 909 F.2d 1260, 1262–63 (9th Cir.1990) (successor liability); *Smith Land & Improvement Corp. v. Celotex Corp.,* 851 F.2d 86, 91–92 (3d Cir.1988) (same), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989); *United States v. Kayser–Roth Corp.,* 724 F.Supp. 15, 19–24 (D.R.I.1989) (parent corporation liability). Likewise, the validity of a release of the right to a CERCLA contribution action is a matter of federal law for which state law provides the rules of decision. *See Mardan Corp. v. C.G.C. Music, Ltd.,* 804 F.2d 1454, 1457–60 (9th Cir.1986). In each of these instances, however, federal law applies not because CERCLA is unique in any fashion; rather, because federal liabilities and federal rights are involved, federal law must be consulted. *See, e.g., Anderson v. Abbott,* 321 U.S. 349, 365, 64 S.Ct. 531, 539, 88 L.Ed. 793 (1944) (federal law determines matter of corporate liability for federal statutory obligations); *Parker v. DeKalb Chrysler Plymouth,* 673 F.2d 1178, 1180 (11th Cir. 1982) (federal law determines validity of purported releases of federal statutory causes of action).

If the description of the statutory scheme halted at this point, it may appear that a potential for conflict exists. Further examination of CERCLA suggests otherwise. Section 9614(a), for instance, provides, "[n]othing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State." Broadly construed, this savings clause effectively rebuts any inference that CERCLA is intended to override the presumption against preemption of insurance regulation guaranteed by the McCarran–Ferguson Act. *Cf.* Comment, *supra,* 16

ECOLOGY L.Q. at 779 ("CERCLA is not an insurance statute").

Additionally, section 9651(g)(3) directed a study by the General Accounting Office to determine the insurability of hazardous waste facilities, which in part covered "[c]urrent trends, if any, in the judicial interpretation and construction of applicable insurance contracts. . . ." This statutory directive appears to presuppose the state law regime governing insurance contracts, *see, e.g.,* H.CONF.REP. No. 962, 99th Cong.2d Sess. 276 (1986), *reprinted in* 1986 U.S.CODE CONG. & ADMIN.NEWS 3276, 3369, and the study, completed in 1987, does not belie this reading. Once more, the statute on its face rebuts Hudson's suggestion that Congress intended to vitiate the presumption of state insurance regulation embodied in the McCarran–Ferguson Act.

More direct evidence lies in subchapter IV of CERCLA, the only portion of the statute directly addressed to insurance, specifically, pollution insurance. While subchapter IV makes inroads into the state power to regulate insurance in order to authorize risk retention groups and purchasing groups that offer pollution insurance,[6] it provides, "[n]othing in this subchapter shall be construed to affect either the tort law or the law governing the interpretation of insurance contracts of any State." 42 U.S.C. § 9672(a). Thus, entities that are formed expressly for the purpose of providing insurance to cover CERCLA liabilities can expect that the content of their insurance policies will be subject to state insurance law. It logically follows

from this savings clause that CERCLA does not preempt state insurance generally. Otherwise the Court must engage in the assumption that Congress intended for federal insurance law to apply to pollution insurance except when federally-protected risk retention groups are the carriers. The absurdity of this arrangement illustrates the weakness in Hudson's complete preemption argument.

The fallacy committed by Hudson is its assumption that the expansive scope of CERCLA in some respects extends to all matters somehow related to those known to be preempted. The case law regarding the complete preemption doctrine dispels this fallacy. Suits arising under § 301 of the National Labor Relations Act ("NLRA"), for example, form the fundamental body of law concerning complete preemption. Yet "not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is preempted by § 301 or other provisions of the federal labor law." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985). "[E]ven under § 301 we have never intimated that any action merely relating to a contract within the coverage of § 301 arises exclusively under that section. For instance, a state battery suit growing out of a violent strike would not arise under § 301 simply because the strike may have been a violation of an employer-union contract." *Franchise Tax Bd.,* 463 U.S. at 25 n. 28, 103 S.Ct. at 2854 n. 28.

---

**6.** Subchapter IV must be read in conjunction with the Liability Risk Retention Act of 1986 ("RRA") which passed contemporaneously with the relevant CERCLA amendments. *See* Superfund Amendments & Reauthorization Act of 1986, Pub.L. 99–499, § 210(b), as added by Liability Risk Retention Act of 1986, Pub.L. 99–563, § 11(c)(1), 100 Stat. 3177 ("For purposes of [42 U.S.C. §§ 9671–75], the powers and authorities of States addressed by the Risk Retention Act of 1986 are in addition to those of this Act."). The limited purpose of the RRA was to pierce the state laws that prevented or impaired the operation of risk retention groups without preempting the myriad of other state regulations of insurance. *See Scales v. Memorial Medical Center,* 690 F.Supp. 1002, 1005–06 (M.D.Fla.1988). Because the scope of the laws subject to pre-

emption to accomplish the goals of the RRA could give rise to a wider preemption inference, the RRA carefully states its preservation of State authority in several places. *See* 15 U.S.C. §§ 3902(f)(1), 3903(g), 3905. Similarly, subchapter IV of CERCLA employs, of necessity, a federal law definition of pollution insurance in the course of defining the statute's reach, *see* 42 U.S.C. § 9671(2), while clarifying the limited purpose of the definition, *id.* § 9672(a). As with the RRA, it is the apparent potential for preemption that prompted congressional inclusion of a savings clause. The absence of an identical provision in subchapter I of CERCLA, then, is not an inference in favor of preemption; rather, it is indicative of Congress' belief that no preemption inference is raised by the structure of that portion of CERCLA.

In fact, one case involving the NLRA, *Malone v. White Motor Corp.*, 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978), is analogous to the present case. In *Malone*, the Court was presented with the argument that the NLRA preempted a right established in a state pension statute because the NLRA empowered the parties to a collective bargaining agreement to come to a private agreement about the subject of the state law. This argument parallels Hudson's assertion that CERCLA preempts state insurance law by preserving the right to enter into a contract of insurance that covers liabilities that may arise under CERCLA. The *Malone* Court, however, rejected the argument. *See id.* at 504–05, 98 S.Ct. at 1189–90; *accord Lueck*, 471 U.S. at 212 n. 7, 105 S.Ct. at 1912 n. 7. This Court perceives no distinction that spares Hudson's argument from the power of this analogy.

It is plain, then, that regardless of the degree of preemption created by a federal statute, the Court must isolate the issues in controversy to determine if those particular issues arise under federal law or not. The issue in this case, the enforceability of an insurance contract, does not fall within the preemptive scope of CERCLA. To the extent that questions of federal law will be implicated in determining Hudson's liability on the policy, those questions are solely an ingredient of a defense, not the underlying cause of action. This type of suit does not arise under CERCLA or any other federal law.

Absent federal question jurisdiction, this Court possesses no basis to entertain this suit. In accordance with the foregoing, it is

ORDERED AND ADJUDGED:

1. That defendant Green River Steel Corporation's Motion for Judgment on the Pleadings is hereby granted;

2. That this case is hereby dismissed without prejudice for want of subject matter jurisdiction; and

3. That the Clerk of the Court is hereby directed to enter final judgment dismissing this case without prejudice for want of subject matter jurisdiction.

DONE AND ORDERED.